**Lansing, Michigan**

# Opinion

| Chief Justice: | Justices: |
|---|---|
| Robert P. Young, Jr. | Michael F. Cavanagh |
| | Marilyn Kelly |
| | Stephen J. Markman |
| | Diane M. Hathaway |
| | Mary Beth Kelly |
| | Brian K. Zahra |

FILED JULY 9, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                                                     No. 142627

JOSEPH LASHAWN VAUGHN,

        Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

      We granted defendant's application for leave to appeal to determine whether defendant is entitled to a new trial because the circuit court closed the courtroom during voir dire in violation of defendant's constitutional rights.[1]  We hold that a defendant's right to a public trial is subject to the forfeiture rule articulated in *People v Carines*[2] and that the Court of Appeals erred by concluding that defendant's failure to assert his public

---

[1] US Const, Am VI; Const 1963, art 1, § 20.

[2] *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

trial right necessarily "forecloses the later grant of relief."[3] In applying the *Carines* forfeiture rule to defendant's appeal, however, we conclude that defendant is not entitled to a new trial because he has not established that his forfeited claim of error "seriously affected the fairness, integrity, or public reputation of judicial proceedings."[4] We further conclude that defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.[5] Accordingly, we vacate the Court of Appeals' opinion to the extent that it is inconsistent with this opinion, affirm on alternative grounds the judgment of the Court of Appeals, and affirm defendant's convictions.

## I. FACTS AND PROCEDURAL HISTORY

On the night of June 14, 2002, defendant, Joseph Lashawn Vaughn, parked his car on a Detroit street so that it partially blocked the driveway of Emmitt Smith, a retired police officer. Smith and a neighbor went over to the car, which defendant had exited, and began talking to a woman in the passenger seat of the car. Defendant then emerged from a nearby alley and began shooting at Smith and the neighbor. In response, Smith returned fire, although defendant ran from the scene. Police traced the parked vehicle to defendant.

Defendant was arrested and charged with possession of a firearm by a felon (felon-in-possession),[6] possession of a firearm in the commission of a felony (felony-

---

[3] *People v Vaughn*, 291 Mich App 183, 196; 804 NW2d 764 (2010).

[4] *Carines*, 460 Mich at 774.

[5] US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

[6] MCL 750.224f.

firearm),[7] and two counts of assault with intent to murder.[8]  He proceeded to a jury trial in the Wayne Circuit Court.  After the circuit court discussed a preliminary matter with counsel of record, a court officer closed the courtroom in preparation for voir dire:

> *The Court*: All right, we'll bring the jury in.
>
> *Court Officer*: Okay, folks you're going to have to clear the courtroom until after the selection of the new jury.

Although the record is unclear regarding how many people were subject to the court's order, it is uncontested that the circuit court did not provide a reason for this closure.   It is also uncontested that neither defendant nor his counsel objected to closure of the courtroom.

At the conclusion of defendant's trial, the jury found defendant guilty of felon-in-possession, felony-firearm, and two counts of assault with intent to commit great bodily harm less than murder.[9]  Defendant raised several claims of error on appeal, among them that the circuit court's closure of the courtroom during voir dire violated his Sixth Amendment right to a public trial and entitled him to a new trial.   Alternatively, defendant claimed that his trial counsel's failure to object to the circuit court's closure of the courtroom constituted ineffective assistance of counsel and likewise entitled him to a new trial.

---

[7] MCL 750.227b.  Defendant was charged as a second offender of MCL 750.227b.  See MCL 750.227b(1).

[8] MCL 750.83.

[9] MCL 750.84.

The Court of Appeals unanimously affirmed defendant's convictions.[10]  The Court of Appeals panel explained that while a defendant has "the right to have the courtroom open to the public during jury voir dire[,] . . . this right is not self-executing [and] the defendant must timely assert the right."[11]  Accordingly, "the failure to timely assert the right to a public trial forecloses the later grant of relief."[12]  Because "defendant's trial counsel did not object to the trial court's decision to close the courtroom to the public during the selection of his jury," the courtroom's closure "does not warrant relief."[13]

The Court of Appeals also determined that defendant was not entitled to relief on the basis of ineffective assistance of counsel because he could not show "that his trial counsel's decision not to object fell below an objective standard of reasonableness under prevailing professional norms . . . ."[14]  It explained that "[d]efendant's trial counsel might have reasonably concluded that proceeding with a jury voir dire that was closed to the public benefitted defendant" because a reasonable trial counsel might determine "that the potential jurors will be more forthcoming in their responses when the courtroom is

---

[10] *Vaughn*, 291 Mich App 183.

[11] *Id.* at 195-196, citing *Presley v Georgia*, 558 US ___; 130 S Ct 721, 724; 175 L Ed 2d 675 (2010), and *Levine v United States*, 362 US 610, 619-620; 80 S Ct 1038; 4 L Ed 2d 989 (1960).

[12] *Vaughn*, 291 Mich App at 196, citing *United States v Hitt*, 473 F3d 146, 155 (CA 5, 2006), *Freytag v Internal Revenue Comm'r*, 501 US 868, 896; 111 S Ct 2631; 115 L Ed 2d 764 (1991) (Scalia, J., concurring), and *Peretz v United States*, 501 US 923, 936-937; 111 S Ct 2661; 115 L Ed 2d 808 (1991).

[13] *Vaughn*, 291 Mich App at 196-197.

[14] *Id.* at 197, citing *People v Yost*, 278 Mich App 341, 387; 749 NW2d 753 (2008).

closed, that the proceedings will be less likely to be tainted by outside influences, or . . . [that] it will expedite the proceedings."[15]

This Court granted defendant's application for leave to appeal, limited to the following issues:

> (1) whether the defendant was denied his right to a public trial pursuant to US Const, Am VI, and Const 1963, art 1, § 20, where the Wayne Circuit Court excluded persons other than jurors from the courtroom during the jury voir dire, see *Presley v Georgia*, 558 US ___; 130 S Ct 721; 175 L Ed 2d 675 (2010); (2) whether the defendant, by failing to object, forfeited or waived any error resulting from the exclusion of the public from the courtroom during the jury voir dire, and, if so, whether trial counsel rendered ineffective assistance in failing to object; (3) whether, if some structural errors can be forfeited, the denial of the right to a public trial is among those forfeitable errors; and (4) whether the defendant is entitled to a new trial as a consequence of the trial court's exclusion of the public during the jury voir dire.[16]

## II. STANDARD OF REVIEW

Defendant claims that the circuit court violated his constitutional right to a public trial when it closed the courtroom during voir dire.[17] Alternatively, defendant claims that his trial counsel's failure to object to the courtroom's closure rendered the assistance of his counsel constitutionally deficient.[18] Whether the circuit court violated defendant's right to a public trial presents a question of constitutional law.[19] Whether defendant was

---

[15] *Vaughn*, 291 Mich App at 197.

[16] *People v Vaughn*, 490 Mich 887 (2011).

[17] See US Const, Am VI; Const 1963, art 1, § 20.

[18] See US Const, Am VI; Const 1963, art 1, § 20.

[19] *United States v Osborne*, 68 F3d 94, 98 (CA 5, 1995).

5

denied the effective assistance of counsel presents a mixed question of fact and constitutional law.[20] We review for clear error a circuit court's findings of fact.[21] We review de novo questions of constitutional law.[22]

## III. RIGHT TO A PUBLIC TRIAL

The right to a public trial "has its roots in our English common law heritage."[23] The Sixth Amendment of the United States Constitution expressly enumerates this right and states that a criminal defendant "shall enjoy the right to a . . . public trial . . . . " The Sixth Amendment right to a public trial is incorporated to the states by the Due Process Clause of the Fourteenth Amendment.[24] Additionally, article 1, § 20 of the 1963 Michigan Constitution guarantees that a criminal defendant "shall have the right to a . . . public trial . . . . "[25] That the right to a public trial also encompasses the right to public voir dire proceedings is "well settled."[26]

---

[20] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[21] *Id.*

[22] *Id.*

[23] *In re Oliver*, 333 US 257, 266; 68 S Ct 499; 92 L Ed 682 (1948).

[24] *Presley*, 558 US at ___; 130 S Ct at 723, citing *Oliver*, 333 US at 273.

[25] This right has existed in every constitution that the people of Michigan have adopted. Const 1835, art 1, § 10 ("In all criminal prosecutions, the accused shall have the right to a . . . public trial . . . ."); Const 1850, art 6, § 28 ("In every criminal prosecution, the accused shall have the right to a . . . public trial . . . ."); Const 1908, art 1, § 19 ("In every criminal prosecution, the accused shall have the right to a . . . public trial . . . .").

Defendant suggested at oral argument that the right to a public trial under the Michigan Constitution is broader than the right to a public trial under the United States Constitution because judges in Michigan are elected, rather than appointed. Compare

6

Const 1963, art 6, §§ 2, 8, 11, and 16 (concerning the election of Supreme Court justices, Court of Appeals judges, circuit judges, and probate judges, respectively) with US Const, art II, § 2 (concerning the executive appointment of federal judges). "Our goal in construing our Constitution is to discern the original meaning attributed to the words of a constitutional provision by its ratifiers," the people, who "are understood to have accepted the words employed in a constitutional provision in the sense most obvious to the common understanding and to have 'ratified the instrument in the belief that that was the sense designed to be conveyed.'" *People v Nutt*, 469 Mich 565, 573-574; 677 NW2d 1 (2004), quoting 1 Cooley, Constitutional Limitations (6th ed), p 81. In determining whether the Michigan Constitution affords more expansive rights than the Constitution of the United States for identically worded phrases and provisions, we have observed that "an expansion of the Michigan Constitution beyond federal protections for identically worded phrases and provisions" is appropriate only when "such protections [are] deeply rooted in the document." *People v Pickens*, 446 Mich 298, 316; 521 NW2d 797 (1994). Of course, the interpretation of federal provisions by the Supreme Court of the United States is relevant to applying similarly worded provisions in the Michigan Constitution, but only to the extent that we believe the Supreme Court's interpretation accurately conveys the original meaning of the Michigan Constitution. See *Harvey v Michigan*, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003).

Defendant points to language in a previous opinion of this Court suggesting that the elective nature of judicial office "adds a dimension to the societal interests involved" in the public's "concern" over criminal proceedings. *Detroit Free Press v Recorder's Court Judge*, 409 Mich 364, 386; 294 NW2d 827 (1980). While there are societal interests in the fact that the people of Michigan have retained the right to elect their judicial officers, we reject the notion that these societal interests confer any greater, or lesser, constitutional protections than those guaranteed by the federal constitution. Indeed, the public interest in having criminal proceedings open is universal and simply does not depend on any particular judicial selection process. Whether judges are elected or appointed, the right to a public trial exists "as a safeguard against *any* attempt to employ our courts as instruments of persecution." *Oliver*, 333 US at 270 (emphasis added). Thus, defendant has not shown that an expansion of a defendant's protections beyond the rights accorded him under the Sixth Amendment is "deeply rooted" in article 1, § 20 to such an extent that the people ratifying the 1963 Michigan Constitution understood the Michigan Constitution to afford greater protections than the Sixth Amendment. Nor has defendant shown that the drafters of the 1963 Michigan Constitution had, or conveyed to the ratifiers, any intent to expand the protections of article 1, § 20 beyond those of the Sixth Amendment. Accordingly, we decline to hold that the right to a public trial is more expansive under the Michigan Constitution than it is under the United States Constitution.

7

Although the Sixth Amendment right "is the right of the accused," a member of the public can invoke the right to a public trial under the First Amendment.[27] "The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other."[28] The existence of this implied First Amendment right enjoyed by members of the public precludes a criminal defendant from enjoying a constitutional right to a *private* trial, even if he waives his Sixth Amendment right to a public trial.[29] Because this case involves "the *accused* who invoked his right to a public trial," albeit after the fact, this case proceeds solely under the Sixth Amendment.[30]

---

[26] *Presley*, 558 US at ___; 130 S Ct at 724. In *Press-Enterprise Co v Superior Court of California, Riverside Co*, 464 US 501, 510; 104 S Ct 819; 78 L Ed 2d 629 (1984) (*Press-Enterprise I*), the Supreme Court of the United States held that the implied First Amendment right provided citizens with a "presumption of openness" during voir dire that could only be overcome under rare circumstances. *Presley* applied this holding of *Press-Enterprise I* to a Sixth Amendment claim because "'there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public.'" *Presley*, 558 US at ___; 130 S Ct at 723, quoting *Waller v Georgia*, 467 US 39, 46; 104 S Ct 2210; 81 L Ed 2d 31 (1984).

[27] *Presley*, 558 US at ___; 130 S Ct at 723.

[28] *Id*. at___; 130 S Ct at 724.

[29] *Singer v United States*, 380 US 24, 35; 85 S Ct 783; 13 L Ed 2d 630 (1965) ("[A]lthough a defendant can, under some circumstances, waive his constitutional right to a public trial, he has no absolute right to compel a private trial[.]"), citing *United States v Kobli*, 172 F2d 919, 924 (CA 3, 1949).

[30] *Presley*, 558 US at ___; 130 S Ct at 723 (emphasis added).

8

A defendant's Sixth Amendment right to a public trial is limited, and there are circumstances that allow the closure of a courtroom during any stage of a criminal proceeding, even over a defendant's objection:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."[31]

If there is a timely assertion of the Sixth Amendment public trial right, the remedy for a violation must be "appropriate to the violation," although "the defendant should not be required to prove specific prejudice in order to obtain relief . . . ."[32]

Although the existence of the Sixth Amendment right to a public trial during voir dire is not questioned, neither this Court nor the Supreme Court of the United States has squarely considered whether the right can be forfeited or waived by a defendant's failure to assert the right in a timely fashion. We turn now to this question.

## A. PRESERVATION OF RIGHT TO A PUBLIC TRIAL

This Court "has long recognized the importance of preserving issues for appellate review."[33] As a result, "[t]his Court disfavors consideration of unpreserved claims of error," even unpreserved claims of constitutional error.[34] In *People v Carines*, this Court

---

[31] *Id.* at ___; 130 S Ct at 724, quoting *Waller*, 467 US at 48 (alteration in original).

[32] *Waller*, 467 US at 49-50 (holding that the appropriate remedy for the violation of the public trial right during a pretrial suppression hearing is a new suppression hearing and not necessarily a new trial).

[33] *Carines*, 460 Mich at 762.

[34] *Id.* at 761, 764-765.

9

adopted the forfeiture standard articulated by the Supreme Court of the United States in *United States v Olano*.[35] Like this Court's jurisprudence, *Olano* reiterated the importance of asserting a constitutional right in a timely manner:

> "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."[36]

Thus, the failure to assert a constitutional right ordinarily constitutes a forfeiture of that right.[37] In analyzing a forfeited claim of error, a defendant is not entitled to relief unless he can establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.[38]

Both parties assert that this Court should not follow the *Carines* forfeiture rule when examining a defendant's Sixth Amendment right to a public trial. We turn first to

---

[35] *Id.* at 763-764, citing *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993). Although *Olano* involved application of the Federal Rules of Criminal Procedure regarding issue preservation, a state procedural requirement can bar an assertion of federal constitutional error when the procedural requirement is "reasonable" and "clearly announced to defendant and counsel . . . ." *Henry v Mississippi*, 379 US 443, 448 n 3; 85 S Ct 564; 13 L Ed 2d 408 (1965).

[36] *Olano*, 507 US at 731, quoting *Yakus v United States*, 321 US 414, 444; 64 S Ct 660; 88 L Ed 834 (1944).

[37] *Olano*, 507 US at 733 ("[F]orfeiture is the failure to make the timely assertion of a right . . . .").

[38] *Carines*, 460 Mich at 763, citing *Olano*, 507 US at 731-734, 736-737.

10

defendant's claim that his Sixth Amendment public trial right is not a forfeitable right, but instead can only be abandoned with his personal and informed waiver of the right.

"What suffices for waiver depends on the nature of the right at issue."[39] Although the violation of the right to a public trial is among the limited class of constitutional violations that are structural in nature,[40] this fact alone does not require that the *waiver* of that right be personal and informed. Indeed, in *Johnson v United States*, the Supreme Court of the United States rejected the argument that *Olano* does not apply to a claimed structural error because it had "no authority" to create "out of whole cloth" an exception to the traditional forfeiture analysis simply because the claimed error was structural.[41]

We likewise decline to create such an exception for the right to a public trial. While certain constitutional rights are preserved absent a personal waiver,[42] those rights

---

[39] *New York v Hill*, 528 US 110, 114; 120 S Ct 659; 145 L Ed 2d 560 (2000).

[40] *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999); *Waller*, 467 US at 49 ("[D]efendant should not be required to prove specific prejudice in order to obtain relief . . . .").

[41] *Johnson v United States*, 520 US 461, 466; 117 S Ct 1544; 137 L Ed 2d 718 (1997).

[42] *Hill*, 528 US at 114 ("For certain fundamental rights, the defendant must personally make an informed waiver."), citing *Johnson v Zerbst*, 304 US 458, 464-465; 58 S Ct 1019; 82 L Ed 1461 (1938) (right to counsel), and *Brookhart v Janis*, 384 US 1, 7-8; 86 S Ct 1245; 16 L Ed 2d 314 (1966) (right to plead not guilty). The concurring justice appears to favor a general rule of automatic reversal for *all* unpreserved structural errors, subject to exceptions when the ultimate determination of guilt remains reliable despite the structural error. Yet this distinction fails fully to acknowledge the importance of issue preservation to this state's jurisprudence and would situate most *forfeited* structural errors identically with preserved structural errors. This argument is particularly unpersuasive given that the Supreme Court of the United States has already identified, in *Hill*, two constitutional rights distinct from the class of "structural errors" that *do* fall outside the ordinary issue preservation requirements *because* they require a personal waiver. Moreover, application of a plain-error analysis to unpreserved structural error does not

constitute a narrow class of foundational constitutional rights that "are of central importance to the quality of the guilt-determining process and the defendant's ability to participate in that process."[43]   Indeed, each of the foundational constitutional rights that are preserved absent a personal waiver necessarily implicates a defendant's *other* constitutional rights.[44]   For example, the purpose of the right to counsel "would be

---

deny that error "close consideration," as the concurring justice suggests, *post* at 3, especially because the plain-error analysis already requires reviewing courts to consider carefully whether any forfeited error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.  *Carines*, 460 Mich at 763, citing *Olano*, 507 US at 736-737.

   While the concurring justice recognizes that a structural error may "defy analysis by 'harmless-error' standards," *United States v Gonzalez-Lopez*, 548 US 140, 148-149; 126 S Ct 2557; 165 L Ed 2d 409 (2006) (citation and quotation marks omitted), he fails to take into account that the caselaw of the Supreme Court of the United States has expressly distinguished plain-error analysis from harmless-error analysis.  For instance, the Court has repeatedly withheld judgment on whether a structural error automatically satisfies the *third* prong of plain-error analysis, *Puckett v United States*, 556 US 129, 140; 129 S Ct 1423; 173 L Ed 2d 266 (2009), implying that structural errors do not entirely defy plain-error analysis, even if they *do* defy *harmless*-error analysis.  Nor does this Court's opinion in *People v Duncan*, 462 Mich 47; 610 NW2d 551 (2000), compel the rule that the concurring justice would adopt.  While *Duncan* acknowledged that "[s]tructural errors . . . are intrinsically harmful," *id.* at 51, this statement is consistent with applying our forfeiture rules because we explicitly follow *Duncan* when applying the third *Carines* prong, as discussed later in this opinion, and *Duncan* does not expressly state that structural errors defy application of plain-error analysis.

[43] *State v Butterfield*, 784 P2d 153, 156 (Utah, 1989).

[44] We think the concurring justice incorrectly suggests that our opinion limits the class of rights that exist outside our ordinary preservation requirements to those specifically identified in *Hill*—the right to counsel and the right to plead not guilty.  However, we do not read *Hill* as necessarily limiting the class to those two rights.  Instead, we compare the public trial right to *Hill*'s examples to determine whether the public trial right is also among the narrow class of foundational constitutional rights that exist outside our ordinary preservation requirements.

nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution"[45] because it is counsel's responsibility to "protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights . . . ."[46]  Because the right to counsel "invokes, of itself, the protection of a trial court,"[47] preservation of the right does not require an affirmative invocation.  Similarly, a waiver of the right to plead not guilty "would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty."[48]  The right to a public trial is "of a different order" because the violation of that right "does not necessarily affect qualitatively the guilt-determining process or the defendant's ability to participate in the process."[49]

Neither the Supreme Court of the United States nor this Court has held that the Sixth Amendment right to a public trial is so fundamental to the protection of a defendant's other constitutional rights that it falls within this exceedingly narrow class of rights that are placed outside the general preservation requirements and require a personal and informed waiver.  Defendant cites two foreign appellate cases, *State v Njonge*[50] and

---

[45] *Johnson*, 304 US at 465.

[46] *Id.*

[47] *Id.*

[48] *Brookhart*, 384 US at 8.

[49] *Butterfield*, 784 P2d at 156.

[50] *State v Njonge*, 161 Wash App 568; 255 P3d 753 (2011).

*Commonwealth v Lavoie*.[51]  Neither is persuasive.  *Njonge* states that a criminal defendant may raise his public trial right "for the first time on appeal."[52]  However, the underlying caselaw—a plurality opinion of the Washington Supreme Court—merely explained that a defendant's failure to object does not "constitute a waiver of his right to a public trial."[53]  That statement did not address, much less compel, a personal and intelligent waiver.[54]  While *Lavoie* does stand for the proposition that a defendant's "knowing agreement is required for the valid waiver of the right to a public trial,"[55] neither *Lavoie* nor the cases it cited examined the right within the framework of the *other* rights that require a personal and knowing waiver.  Accordingly, we do not find it persuasive in explaining *why* the right to a public trial is within the limited class of constitutional rights that require a waiver to be personal and knowing.

Defendant also claims that a Sixth Amendment public trial right should be excepted from our traditional preservation rules because "the whole body politic," not just a criminal defendant, "suffers an actual injury" in the denial of the public trial right.[56]

---

[51] *Commonwealth v Lavoie*, 80 Mass App Ct 546; 954 NE2d 547 (2011).

[52] *Njonge*, 161 Wash App at 574.

[53] *State v Strode*, 167 Wash 2d 222, 229; 217 P3d 310 (2009).

[54] Another basis for differentiating *Njonge* from the instant case is that *Njonge* analyzed the defendant's claim exclusively under the Washington Constitution rather than the Sixth Amendment of the United States Constitution. *Njonge*, 161 Wash App at 574.

[55] *Lavoie*, 80 Mass App Ct at 554.

[56] *People v Yeager*, 113 Mich 228, 230; 71 NW 491 (1897) (citation and quotation marks omitted).

14

Defendant notes language in this Court's opinion in *Detroit Free Press v Recorder's Court Judge* that posits that a defendant "cannot waive his right to a public trial in absolute derogation of the public interest."[57]  From this language, defendant argues that a defendant need not invoke his right to a public trial right in order to preserve it.

Defendant's argument is problematic because it conflates his *Sixth Amendment* right to a public trial with the related, but distinct, *First Amendment* right that the public enjoys.  It is true that a defendant cannot waive a public trial "in *absolute* derogation of the public interest."[58]  However, this "derogation of the public interest" only speaks to the fact that a defendant cannot waive the public's First Amendment right and *demand* a *private* trial.  Thus, a defendant cannot affirmatively seek to exclude the public from his trial unless he can overcome the public's First Amendment right.  That right exists separately from defendant's Sixth Amendment right, and its mere existence does not prevent this Court from enforcing its traditional rules of forfeiture and waiver when reviewing a defendant's claim that his Sixth Amendment right has been violated.

This Court's decision in *Detroit Free Press* failed to recognize the distinction between the separate but related First and Sixth Amendment rights.  *Detroit Free Press* acknowledged that "[f]rom a literal standpoint, the Sixth Amendment provides the right to a public trial to 'the accused,'"[59] and it observed that "[t]he societal interests served by [the right to a public trial] are separate from and at times may be in opposition to the

---

[57] *Detroit Free Press*, 409 Mich at 385.

[58] *Id.* (emphasis added).

[59] *Id.* at 382.

15

interests of the accused."[60]  However, it also suggested that these societal interests are encompassed in the Sixth Amendment rather than the First Amendment.  For instance, it noted that "the Sixth Amendment has been held to implicate interests beyond those of the accused"[61] and emphasized that the Sixth Amendment protections provided to the accused were not intended "to denigrate the interests of the public which are at the root of the public-trial guarantee."[62]

United States Supreme Court caselaw undermines the *Detroit Free Press* analysis to the extent that *Detroit Free Press* rooted the public's right to public trial proceedings in the Sixth Amendment instead of the First Amendment.[63]  The *Detroit Free Press* decision was issued shortly after the Supreme Court issued *Richmond Newspapers, Inc v Virginia*,[64] which identified the public's right of access to trial proceedings as within the

---

[60] *Id*. at 385.

[61] *Id*. at 384.

[62] *Id.* at 389.

[63] Justice RYAN's dissenting opinion recognized that "the resolution of this case is governed by the First Amendment of the United States Constitution as it is made applicable to the states through the Fourteenth Amendment," and he  believed that the majority opinion's emphasis on the Sixth Amendment and common law "assures the irrelevance of today's decision and fuels the increasingly widespread notion that state courts cannot be depended upon to adequately address and resolve cases involving major Federal constitutional issues."  *Id.* at 399 (RYAN, J., dissenting).  Justice LEVIN's concurring opinion also acknowledged that the majority "should . . . recognize the First Amendment in the disposition of this case."  *Id.* at 395 (LEVIN, J., concurring).

[64] *Richmond Newspapers, Inc v Virginia*, 448 US 555; 100 S Ct 2814; 65 L Ed 2d 973 (1980).

16

First Amendment.[65] Subsequently, in *Press-Enterprise I*, the Court clarified that whether voir dire must be open "focuses on First . . . Amendment values and the historical backdrop against which the First Amendment was enacted."[66] Similarly, when a defendant "requested a *closed* preliminary hearing," the Court emphasized that "the right asserted here is that of the public under the First Amendment."[67] Because a defendant's Sixth Amendment right exists separately from the public's First Amendment right, the existence of the public's First Amendment right simply has no bearing on whether to apply our forfeiture analysis to a defendant's Sixth Amendment claim, and the erroneous conflation of these rights by *Detroit Free Press* does not provide a basis for creating an exception to our traditional rules of forfeiture and waiver.[68]

---

[65] Although there was no majority opinion in *Richmond Newspapers*, a majority of the Court specifically identified the relevant right as a First Amendment right. See *Richmond Newspapers*, 448 US at 577 (Burger, C.J., lead opinion on behalf of himself and White and Stevens, JJ.) ("The right of access to places traditionally open to the public, as criminal trials have long been, may be seen as assured by the amalgam of the First Amendment guarantes of speech and press; and their affinity to the right of assembly is not without relevance."); *id.* at 585 (Brennan, J., concurring, on behalf of himself and Marshall, J.) ("[T]he First Amendment—of itself and as applied to the States through the Fourteenth Amendment—secures . . . a public right of access, I agree with those of my Brethren who hold that, without more, agreement of the trial judge and the parties cannot constitutionally close a trial to the public."); *id.* at 599 (Stewart, J., concurring) ("[T]he First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal.").

[66] *Press-Enterprise I*, 464 US at 509 n 8.

[67] *Press-Enterprise Co v Superior Court of California, Riverside Co*, 478 US 1, 7; 106 S Ct 2735; 92 L Ed 2d 1 (1986) (*Press-Enterprise II*).

[68] To the extent *Detroit Free Press* deviates from these holdings on a matter of federal constitutional interpretation, we must follow the holdings of the Supreme Court of the United States rather than our own caselaw. See *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007). In any event, the nuanced relationship between the First and Sixth

17

Alternatively, the prosecution and the Attorney General (acting as amicus curiae) claim, and the Court of Appeals held, that a defendant's Sixth Amendment right to a public trial is not self-executing and, therefore, the failure to assert the right at the time of closure results in the waiver of that right.[69]  Indeed, many other jurisdictions have concluded that a defendant's public trial right is waived when it is not asserted contemporaneously with the courtroom's closure.[70]  To support the conclusion that the right is waived by silence, the prosecution points to language in *United States v Levine*, wherein the Supreme Court of the United States observed:

> Due regard generally for the public nature of the judicial process does not require disregard of the solid demands of the fair administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal.[71]

---

Amendment rights expressed in the cases of the Supreme Court of the United States is a better reasoned approach than that of *Detroit Free Press*.

[69] Although the Court of Appeals did not expressly use the term "waiver" in its core holding, it explained that "the failure to timely assert the right to a public trial forecloses the later grant of relief," and parenthetically quoted caselaw that discussed the matter in terms of waiver.  *Vaughn*, 291 Mich App at 196, quoting *Hitt*, 473 F3d at 155 ("Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial.").

[70] See, e.g., *Robinson v State*, 410 Md 91, 108; 976 A2d 1072 (2009) ("[W]e are in accord with the majority of the federal and state courts that a claimed deprivation of the right to a public trial can be waived by counsel's failure to lodge a contemporaneous objection to the closure.").

[71] *Levine*, 362 US at 619-620.

Although *Levine* examined a defendant's right to open criminal contempt proceedings under the Due Process Clause of the Fifth Amendment,[72] a subsequent Supreme Court opinion, *Peretz v United States*, cited *Levine* in dictum for the proposition that the "failure to object to [the] closing of [the] courtroom is [a] waiver of [the] right to public trial."[73]

We decline to follow the dictum of the Supreme Court of the United States because it conflates the concepts of waiver and forfeiture that we have historically recognized in Michigan. Both this Court and the Supreme Court of the United States have distinguished the failure to assert a right—forfeiture—from the affirmative waiver of a right.[74] *Olano* explained that "[w]aiver is different from forfeiture" in that waiver is "the '*intentional* relinquishment or abandonment of a known right.'"[75] A defendant who waives a right extinguishes the underlying error and may not seek appellate review of a

---

[72] *Id.* at 616.

[73] *Peretz*, 501 US at 936. The core holding in *Peretz* was that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Id.*

[74] Of course, appellate courts have not always used the terms with precision. See *Freytag*, 501 US at 894 n 2 (Scalia, J., concurring) ("The two [i.e., waiver and forfeiture] are really not the same, although our cases have so often used them interchangeably that it may be too late to introduce precision.").

[75] *Olano*, 507 US at 733 (emphasis added) (citation omitted).

claimed violation of that right.[76]  "Mere forfeiture, on the other hand, does not extinguish an 'error.'"[77]

The prosecution and the Attorney General claim that we should adopt an exception to this traditional definition of "forfeiture" because any result other than a waiver will encourage defense counsel to withhold objection as an appellate parachute.  However, this argument fails to take into consideration the heightened standard of review already applied to forfeited claims of error.  *Carines* requires a defendant who has forfeited his claim of error to prove (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.[78]  In other words, the prosecution and the Attorney General have not shown that the *Carines* forfeiture requirements permit an appellate parachute in this circumstance.[79]

---

[76] *Carter*, 462 Mich at 215, citing *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996), and *Olano*, 507 US at 733-734.

[77] *Carter*, 462 Mich at 215, citing *Olano*, 507 US at 733, and *Griffin*, 84 F3d at 924-926.

[78] *Carines*, 460 Mich at 763, citing *Olano*, 507 US at 731-734, 736-737.

[79] Likewise, we do not consider persuasive the prosecution's comparisons to the right against compelled self-incrimination and the right of self-representation, which must be asserted or they are waived.  See *Roberts v United States*, 445 US 552, 559; 100 S Ct 1358; 63 L Ed 2d 622 (1980) ("The Fifth Amendment privilege against compelled self-incrimination is not self-executing."); *Munkus v Furlong*, 170 F3d 980, 983 (CA 10, 1999) ("[B]ecause the right to self-representation arises only when a defendant knowingly and intelligently waives the right to counsel, courts consistently have discussed the right to self-representation in terms of invoking or asserting it.").  In both of those situations, unlike the right to a public trial, the defendant's own actions *necessarily* result in *either* the assertion *or* the waiver of the right; there is simply no potential for

Because neither party has persuasively shown that this Court should deviate from the general *Carines* rule regarding forfeited constitutional error, we hold that *Carines* applies to defendant's forfeited claim that the trial court violated his Sixth Amendment public trial right. The Court of Appeals erred by concluding that defendant's failure to assert his Sixth Amendment right to a public trial *necessarily* "forecloses the later grant of relief."[80]

## B. APPLICATION

As stated, in order to receive relief on his forfeited claim of constitutional error, defendant must establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.[81]

The first two prongs of the analysis are straightforward. In this case, the circuit court ordered the courtroom closed before voir dire. The Supreme Court of the United States has stated that "'the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced . . . .'"[82] Because the circuit court failed to advance

---

"forfeiture." Any invocation of the right to self-representation necessarily requires the waiver of the right to counsel, which must be personal and knowing. See *Faretta v California*, 422 US 806, 835; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Similarly, by choosing to make incriminating statements, a defendant necessarily waives the right against self-incrimination.

[80] *Vaughn*, 291 Mich App at 196.

[81] *Carines*, 460 Mich at 763, citing *Olano*, 507 US at 731-734, 736-737.

[82] *Presley*, 558 US at ___; 130 S Ct at 724, quoting *Waller*, 467 US at 48.

21

that type of interest before closing the courtroom, we conclude that an error occurred.[83]

We also conclude that the error was plain, that is, "clear or obvious."[84]  It is readily apparent from the record that the circuit court closed the courtroom during voir dire.  It is also "well settled" that the Sixth Amendment right to a public trial extends to voir dire.[85]

The third *Carines* prong requires a defendant to show that the error "affected substantial rights."[86]  For this prong to be satisfied, *Olano* requires the error to have "affected the outcome of the . . . proceedings."[87]  Similarly, this Court has stated that "the proper interpretation of the term 'prejudice' in the context of issue preservation for plain error may be equated with the longstanding state precedent of outcome determination."[88]  Thus,

> a plain, *unpreserved* error may not be considered by an appellate court for the first time on appeal unless the error could have been decisive of the outcome or unless it falls under the category of cases, yet to be clearly defined, where prejudice is presumed or reversal is automatic.[89]

---

[83] Although the court officer, not the circuit court, ordered spectators "to clear the courtroom until after the selection of the new jury," the court officer's order came immediately after the circuit court ordered the jury brought into the courtroom. Accordingly, it is apparent from the record that the court officer's action is attributable to the court.

[84] *Carines*, 460 Mich at 763.

[85] *Presley*, 558 US at ___; 130 S Ct at 724.

[86] *Carines*, 460 Mich at 765.

[87] *Olano*, 507 US at 734.

[88] *People v Grant*, 445 Mich 535, 553; 520 NW2d 123 (1994).

[89] *Id.*

22

While the Supreme Court of the United States has specifically reserved judgment on whether an unpreserved structural error automatically affects a defendant's substantial rights,[90] this Court's decision in *People v Duncan* has explained that structural errors "are intrinsically harmful, without regard to their effect on the outcome . . . ."[91] Accordingly, our caselaw suggests that a plain structural error satisfies the third *Carines* prong.

Nevertheless, even if defendant can show that the error satisfied the first three *Carines* requirements, we "must exercise . . . discretion" and only grant defendant a new trial if the error "resulted in the conviction of an actually innocent defendant" or seriously affected the fairness, integrity, or public reputation of judicial proceedings.[92] Although denial of the right to a public trial is a structural error,[93] it is still subject to this requirement.[94] While "any error that is 'structural' is likely to have *an* effect on the fairness, integrity or public reputation of judicial proceedings," the plain-error analysis requires us to "consider whether an error '*seriously*' affected those factors."[95]

---

[90] See *Puckett*, 556 US at 140, quoting *Arizona v Fulminante*, 499 US 279, 310; 111 S Ct 1246; 113 L Ed 2d 302 (1991) ("This Court has several times declined to resolve whether 'structural' errors—those that affect 'the framework within which the trial proceeds,'—automatically satisfy the third prong of the plain-error test.") (citation omitted).

[91] *Duncan*, 462 Mich 51.

[92] *Carines*, 460 Mich at 763. Because defendant has not argued that he is actually innocent, we review his claim of error only with regard to whether his conviction seriously affected the fairness, integrity, or public reputation of judicial proceedings.

[93] *Neder*, 527 US at 8.

[94] *Barrows v United States*, 15 A3d 673 (DC, 2011).

[95] *Id.* at 679-680 (emphasis added).

23

The United States Court of Appeals for the Second Circuit has recognized that "it does not follow that every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned."[96] While the Second Circuit's analysis "does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer 'prejudice' or 'specific injury,'" it examines "whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment."[97] The goals sought by these protections include (1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury.[98]

In reviewing the closure of a courtroom during the first day of jury selection, the Second Circuit determined that the third and fourth protected values were "not implicated by voir dire because no witnesses testified."[99] The Second Circuit then analyzed the remaining two protected values within the particular circumstances of the case before it and concluded that "limiting presence at the voir dire proceedings to only the attorneys,

---

[96] *Gibbons v Savage*, 555 F3d 112, 120 (CA 2, 2009).

[97] *United States v Gupta*, 650 F3d 863, 867 (CA 2, 2011).

[98] *Peterson v Williams*, 85 F3d 39, 43 (CA 2, 1996), citing *Waller*, 467 US at 46-47.

[99] *Gibbons*, 555 F3d at 121.

judge, defendant, and prospective jurors for one afternoon did not subvert these values."[100]

A review of the circuit court transcript during defendant's voir dire shows that both parties engaged in a vigorous voir dire process, that there were no objections to either party's peremptory challenges of potential jurors, and that each party expressed satisfaction with the ultimate jury chosen. Moreover, because "the *venire* is drawn from the public itself," individual veniremembers "remain public witnesses during much of the *voir dire* proceedings, listening to the court's questions and observing the conduct of counsel, until such time as they are chosen for the jury, disqualified, or excused."[101] Thus, "the presence of the *venire* lessens the extent to which [the court's] closure implicates the defendant's public trial right because the *venire*, derived from and representative of the public, guarantees that the *voir dire* proceedings will be subject to a substantial degree of continued public review."[102] Because the closure of the courtroom was limited to a vigorous voir dire process that ultimately yielded a jury that satisfied both parties, we cannot conclude that the closure "seriously affected the fairness,

---

[100] *Id.*

[101] *Gupta*, 650 F3d at 870.

[102] *Id.* at 870-871. The concurring justice suggests that this Court's acknowledgment of this fact risks that "a defendant will never be able to satisfy the requirements to overcome forfeiture under the plain-error analysis." *Post* at 9. However, we do not hold that the presence of other veniremembers is *dispositive* to the analysis of the fourth *Carines* prong, only that it is *relevant* to that analysis.

integrity, or public reputation of judicial proceedings."[103] Defendant is not entitled to a new trial on the basis of his forfeited claim of error.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment also guarantees a criminal defendant's right "to have the Assistance of Counsel for his defence."[104] The Supreme Court of the United States has recognized that "'the right to counsel is the right to the effective assistance of counsel.'"[105] The right to the effective assistance of counsel is incorporated to the states by the Due Process Clause of the Fourteenth Amendment.[106]

In *Strickland v Washington*, the Supreme Court of the United States stated that in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness"[107] and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[108]

---

[103] *Carines*, 460 Mich at 774.

[104] Additionally, article 1, § 20 of the 1963 Michigan Constitution guarantees that a criminal defendant "shall have the right . . . to have the assistance of counsel for his or her defense . . . ." "[T]he intention underlying the Michigan Constitution does not afford greater protection than federal precedent with regard to a defendant's right to counsel when it involves a claim of ineffective assistance of counsel." *Pickens*, 446 Mich at 302.

[105] *Strickland*, 466 US at 686, quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970).

[106] *Powell v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932).

[107] *Strickland*, 466 US at 688.

[108] *Id.* at 694.

Defendant claims that his counsel's failure to object to the courtroom's closure during voir dire entitles him to a new trial on the basis of ineffective assistance of counsel.

## A. DEFICIENT PERFORMANCE PRONG

Defense counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[109] The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[110] This standard requires a reviewing court "to affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.'"[111]

The Court of Appeals panel did just that in reviewing defendant's claim. The panel reasoned that "[d]efendant's trial counsel might have reasonably concluded that proceeding with a jury voir dire that was closed to the public benefitted defendant" because "[r]easonable trial counsel might conclude that the potential jurors will be more forthcoming in their responses when the courtroom is closed, that the proceedings will be less likely to be tainted by outside influences, or might simply find the procedure preferable because it will expedite the proceedings."[112]

---

[109] *Id.* at 690.

[110] *Id.*

[111] *Cullen v Pinholster*, 563 US ___, ___; 131 S Ct 1388, 1407; 179 L Ed 2d 557 (2011), quoting *Pinholster v Ayers*, 590 F3d 651, 692 (CA 9, 2009) (Kozinski, C.J., dissenting).

[112] *Vaughn*, 291 Mich App at 197.

The Court of Appeals' conclusion is consistent with the conclusion of the United States Court of Appeals for the First Circuit that when analyzing an ineffective assistance of counsel claim, "the strategic advantage that [defendant] received from the individual voir dire taking place in private cannot be ignored."[113] Accordingly, we agree with the Court of Appeals' analysis and its conclusion that defendant is not entitled to relief on his ineffective assistance of counsel claim.

## B. PREJUDICE PRONG

Even if defendant had shown that counsel's performance was objectively unreasonable, defendant cannot show that he is entitled to relief on the second *Strickland* prong, which requires this Court to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[114]

Defendant claims that a structural error automatically satisfies the second *Strickland* prong. However, *Strickland* and a companion case, *United States v Cronic*, articulated only a narrow class of situations in which prejudice is presumed for ineffective assistance purposes: "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding"[115] or "when counsel is burdened by an actual conflict of interest."[116] Otherwise, "actual ineffectiveness

---

[113] *Horton v Allen*, 370 F3d 75, 82-83 (CA 1, 2004).

[114] *Strickland*, 466 US at 694.

[115] *United States v Cronic*, 466 US 648, 659 n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984).

[116] *Strickland*, 466 US at 692.

28

claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice" because "[t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence."[117]

Although this Court has not yet ruled on the issue, the United States Court of Appeals for the Eleventh Circuit and the Georgia and Utah Supreme Courts have held that an ineffective assistance of counsel claim premised on a structural public trial right violation still requires a defendant to demonstrate actual prejudice.[118] The Eleventh Circuit explained:

> We cannot dispense with the prejudice requirement for attorney error of this type without defying the Supreme Court's clear holding that except in three limited circumstances, which are not present here, a defendant must show that any error his counsel committed "actually had an adverse effect on the defense." [*Strickland*, 466 US at 693.] That means he must prove a reasonable probability of a different result.[119]

The Eleventh Circuit elaborated on the concept of prejudice in applying that requirement to the case before it, which involved an ineffective assistance of counsel claim premised on the failure to object when the trial judge closed the courtroom for the victim's testimony:

> [Defendant] cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If

---

[117] *Id*. at 693.

[118] *Purvis v Crosby*, 451 F3d 734, 741 (CA 11, 2006); *Butterfield*, 784 P2d at 157; *Reid v State*, 286 Ga 484, 487; 690 SE2d 177 (2010).

[119] *Purvis*, 451 F3d at 741.

counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. We do not know, and when we do not know the party with the burden loses, and here that party is [defendant].

Against this logic [defendant] argues that an objection by his trial counsel would have preserved the issue for appeal and led to a reversal of his conviction, which would have been a different result from the affirmance that occurred. There are two flaws with this argument. One is its assumption that the trial judge would have overruled an objection if one had been made. There is as much reason to believe that pointing out the error of his ways to the trial judge would have caused him to mend those ways, thereby depriving [defendant] of the issue on appeal. The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial. The Supreme Court in *Strickland* told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal.[120]

However, the United States Courts of Appeals for the First and Eighth Circuits have ruled that a structural error automatically satisfies the *Strickland* prejudice prong.[121] The First Circuit criticized the Eleventh Circuit's reasoning, explaining that its actual prejudice requirement "is in tension with the Supreme Court's pronouncement that prejudice is presumed in cases of structural error not because the risk of prejudice is high, but because it is impossible to determine the extent of the prejudice."[122]

---

[120] *Id.* at 738-739, citing *Strickland*, 466 US at 694-695.

[121] *Owens v United States*, 483 F3d 48, 64 n 14 (CA 1, 2007); *McGurk v Stenberg*, 163 F3d 470, 475 (CA 8, 1998).

[122] *Owens*, 483 F3d at 65 n 14.

We conclude that the Eleventh Circuit's reasoning and conclusion is more persuasive. Without distinguishing a properly preserved structural error for which reversal is required from an error claimed as ineffective assistance of counsel, counsel can harbor error as an appellate parachute by failing to object to the closure of trial, thereby depriving the trial court of the opportunity to correct the error at the time it occurs. Further, because this is not one of the three circumstances in which the Supreme Court of the United States has held that trial counsel's ineffective assistance automatically results in *Strickland* prejudice, we conclude that an ineffective assistance of counsel claim premised on either counsel's waiver of or failure to object to the Sixth Amendment right to a public trial requires a showing of actual prejudice before the defendant is entitled to relief.

In this case, defendant does not claim that the courtroom's closure during voir dire affected the voir dire process and tainted the ultimate jury chosen. To the contrary, defense counsel actively participated in the voir dire process and expressed satisfaction with the composition of the jury and, thus, we must presume that the resulting jury was a fair and neutral fact-finder. Because defendant cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"[123] he is not entitled to relief on his ineffective assistance of counsel claim.

---

[123] *Strickland*, 466 US at 694.

V. CONCLUSION

While a criminal defendant has the constitutional right to a public trial, that right is forfeited when no objection is made at the time of the courtroom's closure to members of the public. As a forfeited claim of constitutional error, the defendant can obtain relief if he shows that the court's exclusion of members of the public during voir dire was "a plain error that affected substantial rights" and that he either "is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[124] Because defendant has not made the required showing in this case, he is not entitled to a new trial on his forfeited claim of error. Nor is he entitled to a new trial on the basis of ineffective assistance of counsel because he has not shown that his counsel's performance was objectively unreasonable or that there was a reasonable probability that any error affected the proceeding's outcome. Accordingly, we vacate the Court of Appeals' opinion to the extent it is inconsistent with this opinion, affirm on

---

[124] *Carines*, 460 Mich at 774.

alternative grounds the judgment of the Court of Appeals, and affirm defendant's convictions.[125]

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

---

[125] Defendant raised several issues in his application for leave to appeal beyond the limited scope of this Court's order granting leave to appeal: that the trial court erred by denying his motion to suppress the statement that he made to police, that the missing lower court record deprived defendant of his right to appeal, and that counsel rendered ineffective assistance by failing to challenge two jurors during voir dire, failing to call two alibi witnesses, and failing to quash the information. The Court of Appeals concluded that these claims of error were without merit, and we deny defendant's application for leave to appeal on these remaining issues because we are not persuaded that the questions presented should be reviewed by this Court.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                         No. 142627

JOSEPH LASHAWN VAUGHN,

      Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

I concur in the majority's result only. I agree with the majority's conclusion that a violation of the right to a public trial, including the right to public voir dire, is structural error. *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999); *Waller v Georgia*, 467 US 39, 49-50; 104 S Ct 2210; 81 L Ed 2d 31 (1984); *Presley v Georgia*, 558 US ___; 130 S Ct 721, 724; 175 L Ed 2d 675 (2010).[1] The majority also correctly

_____

[1] Indeed, as the United States Supreme Court explained in *Waller*, 467 US at 49 n 9, "[w]hile the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real." Accordingly, in the context of the right to public voir dire, MCR 8.116(D) establishes very limited circumstances under which a court may close the courtroom. See, also, *Waller*, 467 US at 48 (explaining that in order to close a courtroom, four requirements must be satisfied: (1) the party seeking closure must advance an overriding interest that is likely to be prejudiced by an open courtroom, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) the trial court must make findings adequate to support the closure). In my view, these strict limitations on courtroom closure indicate the importance placed on the right to a public trial, including voir dire under *Presley*, 558 US at ___; 130 S Ct at 724.

notes that neither this Court nor the United States Supreme Court has directly considered whether a defendant can waive or forfeit the erroneous denial of the right to public voir dire. Finally, I agree with the majority's conclusion that the right to public voir dire is not subject to waiver by silence and that the Court of Appeals erred by concluding otherwise.

Although I agree with the majority that a structural error occurred in this case, I do not agree with the majority that *Johnson v United States*, 520 US 461; 117 S Ct 1544; 137 L Ed 2d 718 (1997), definitively established that some structural errors may be subject to a forfeiture analysis. *Johnson* applied plain-error review to the petitioner's argument that a structural error had occurred; however, *Johnson* reserved judgment on whether the error at issue was actually structural in nature. *Id.* at 468-469. Moreover, *Neder*, 527 US at 8-10, interpreted *Johnson* as holding that the error was not structural. Thus, I disagree with the majority that, by arguing in favor of automatic reversal, defendant in this case seeks an "exception" to the general rules for issue preservation. *Ante* at 11.

Additionally, the majority misapplies this Court's opinion in *People v Duncan*, 462 Mich 47; 610 NW2d 551 (2000), in analyzing whether the structural error in this case requires automatic reversal. I think that *Duncan* must be closely considered at this step of the analysis, particularly *Duncan*'s statement that

> structural errors . . . are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal. Such an error necessarily renders unfair or unreliable the determining of guilt or innocence. . . . [S]tructural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. [*Id.* at 51-52 (citations omitted).]

2

In my view, *Duncan* accurately explains the "intrinsically harmful" nature of most structural errors and, accordingly, whenever a structural error occurs, I believe the potential need for automatic reversal should be given close consideration, even if the error is unpreserved. The majority concedes that *Duncan* held that "'[s]tructural errors . . . are intrinsically harmful,'" but the majority claims that "this statement is consistent with applying our forfeiture rules . . . ." *Ante* at 12 n 42. However, the majority ignores that *Duncan* also explained that intrinsically harmful structural errors "require *automatic reversal*" when such an error "renders unfair or unreliable the determining of guilt or innocence." *Duncan*, 462 Mich at 51 (emphasis added). Similarly, the United States Supreme Court has explained that, although rare, some errors are structural "and thus require[] automatic reversal." *Washington v Recuenco*, 548 US 212, 218; 126 S Ct 2546; 165 L Ed 2d 466 (2006).[2] Accordingly, because the error at issue in this case is structural, and structural errors are generally subject to automatic

---

[2] The majority also criticizes my preference for a general rule of automatic reversal for structural errors with a citation to *New York v Hill*, 528 US 110, 114; 120 S Ct 659; 145 L Ed 2d 560 (2000). As the majority states, *Hill* acknowledged that "certain fundamental rights" require a personal and informed waiver by the defendant, i.e., automatic reversal. *Hill*, 528 US at 114. The majority opinion could be read as arguing that *Hill* stands for the proposition that the denial of the right to counsel and the right to plead not guilty are the *only* errors that require automatic reversal. See *ante* 11 n 42. However, as the majority later acknowledges in footnote 44 of its opinion, *Hill* clearly offers the denial of those two rights as *examples* of errors requiring automatic reversal. *Hill*, 528 US at 114 ("For certain fundamental rights, the defendant must personally make an informed waiver. **See, e.g.**, *Johnson v Zerbst*, 304 US 458, 464-465; 58 S Ct 1019; 82 L Ed 1461 (1938) (right to counsel); *Brookhart v Janis*, 384 US 1; 7-8, 86 S Ct 1245; 16 L Ed 2d 314 (1966) (right to plead not guilty).") (emphasis added). Thus, the majority opinion should not be interpreted as limiting the scope of constitutional rights that require automatic reversal to only the rights discussed in *Hill*.

reversal, *Neder*, 527 US at 8; *Washington*, 548 US at 218, I believe that there must be an "exception" in order to apply plain-error review in this case.[3]

As the majority explains, denial of the right to public voir dire is a structural error, but the United States Supreme Court has not "squarely considered whether the right [to public voir dire] can be forfeited . . . ." *Ante* at 9.  Thus, today we are faced with an issue of first impression in our state and one that has not yet been directly addressed by the United States Supreme Court.

Considerable tension exists in the available caselaw regarding whether the denial of the right to a public trial requires automatic reversal.  For example, several opinions from the United States Supreme Court appear to indicate that denial of the right to a public trial is structural error requiring automatic reversal.  See, e.g., *Washington*, 548 US at 218 (offering "denial of public trial" as an example of "an error [that] is structural, and thus requires automatic reversal"), citing *Waller*, 467 US 39); and *Neder*, 527 US at 8 (same).  On the other hand, as the majority explains, several opinions that consider more directly the issue of an unpreserved claim of the denial of the right to public voir dire have applied plain-error review.  See, e.g., *Barrows v United States*, 15 A3d 673 (DC, 2011).  And in *United States v Agosto-Vega*, 617 F3d 541, 547-548 (CA 1, 2010), the court addressed a preserved claim of the denial of the right to public voir dire and held

---

[3] See *United States v Marcus*, 560 US ___; 130 S Ct 2159, 2168; 176 L Ed 2d 1012 (2010) (Stevens, J., dissenting) (explaining that plain-error analysis "requires lower courts to conduct four separate inquiries, each of which requires a distinct form of judgment and several of which have generated significant appellate-court dissensus; *the test may also contain an exception for 'structural errors,'* a category we have never defined clearly") (emphasis added).

that a new trial was required. What is particularly notable about *Agosto-Vega* is that the court did not engage in a harmless-error analysis but instead apparently took the view that denial of the right to public voir dire falls into the class of errors that defy harmless-error analysis. *Id*.; see *Arizona v Fulminante*, 499 US 279, 309-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (explaining that some errors "defy analysis by 'harmless-error' standards"). *Agosto-Vega*'s approach seems to be supported by *United States v Gonzalez-Lopez*, 548 US 140, 148-149; 126 S Ct 2557; 165 L Ed 2d 409 (2006), in which the United States Supreme Court identified the denial of the right to a public trial as a "structural defect" that "def[ies] analysis by 'harmless-error' standards" because a structural defect affects the "framework within which the trial proceeds" and is "not simply an error in the trial process itself." (Citation and quotation marks omitted.) Accordingly, I find it difficult to square the notion that the denial of public voir dire defies harmless-error standards and is thus subject to automatic reversal when preserved because the resulting harm is "necessarily unquantifiable and indeterminate," *Sullivan v Louisiana*, 508 US 275, 282; 113 S Ct 2078; 124 L Ed 2d 182 (1993), but the same error is nevertheless subject to plain-error analysis when unpreserved.[4]

---

[4] Indeed, other courts have also struggled with this paradox. See *United States v Floresca*, 38 F3d 706, 712 (CA 4, 1994) (concluding that the error at issue was structural but nevertheless reluctantly applying plain-error review and stating that "[w]e apply [*United States v*] *Olano* [507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993)] although it is by no means clear that we should," and that "[i]t is an open question as to whether the absence of an objection requires further analysis when the alleged error goes to the heart of the entire judicial process"). Thus, while the majority may be correct to rely on implications in the available caselaw regarding the interplay between plain-error and harmless-error analysis, it is nevertheless clear that courts understandably continue to struggle with this unsettled issue.

Despite this tension in the caselaw, I think that *Duncan* accurately tied the "intrinsically harmful" nature of structural errors to the effect of those errors on the reliability of the trial's determination of guilt or innocence. *Duncan*, 462 Mich at 51-52. As the United States Supreme Court explained in *Washington*, structural errors generally require automatic reversal because a structural error "'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Washington*, 548 US at 218-219, quoting *Neder*, 527 US at 9 (alteration in original). Accordingly, in the context of an unpreserved claim of a violation of the right to public voir dire, if it can be shown that the ultimate determination of guilt remains reliable, I agree with the majority that, under Michigan's current law, the error may be examined

---

Another possible way to view the difficult issue presented by unpreserved structural errors may be to conclude that structural errors require automatic reversal because even if the plain-error analysis is applied, all four prongs will *always* be satisfied when the error is structural. See, e.g., *United States v Recio*, 371 F3d 1093, 1103 n 7 (CA 9, 2004) ("[I]t is difficult to imagine a case where structural error will not satisfy [the] fourth requirement [of the plain-error analysis]."); *United States v Rodriguez*, 406 F3d 1261, 1266 (CA 11, 2005) (Carnes, J., concurring) ("Because structural error, where it exists, renders a criminal punishment fundamentally unfair, it would be difficult to justify a conclusion that an error that is structural does not 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'") (citation omitted). But other courts that have applied plain-error analysis to structural errors have concluded that not all structural errors satisfy the fourth prong of the analysis. See, e.g., *United States v Vazquez*, 271 F3d 93, 100 (CA 3, 2001); *United States v David*, 83 F3d 638, 647-648 (CA 4, 1996).

6

for plain error under *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999),[5] because "the remedy should be appropriate to the violation." *Waller*, 467 US at 50.[6]

As for the majority's application of the *Carines* plain-error factors, I agree that the first two prongs—that an error occurred and the error was plain—are clearly established in this case. As for the third prong, which requires a showing that the error "affected substantial rights," *Carines*, 460 Mich at 763, I believe that *Duncan* does more than merely "suggest" that plain structural error is prejudicial. Although "this Court and the United States Supreme Court have left open the possibility that there is a category of errors for which the third prong of the plain-error standard is automatically met," *People v Shafier*, 483 Mich 205, 220 n 15; 768 NW2d 305 (2009), denial of the right to a public trial is an error that must be presumed prejudicial because "a requirement that prejudice be shown 'would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of

---

[5] Although I disagree with this Court's adoption of the federal plain-error doctrine for the reasons provided in *People v Grant*, 445 Mich 535, 554-557, 520 NW2d 123 (1994) (LEVIN, J., concurring); and *Carines*, 460 Mich at 775-783 (MARILYN KELLY, J., dissenting), I nonetheless recognize that *Carines* is the law in Michigan, as I have done in previous cases. See *People v Shafier*, 483 Mich 205, 219-224; 768 NW2d 305 (2009).

[6] I agree with the majority that under Michigan's current law, plain-error review is applicable to denial of the right to public voir dire if no objection to the denial was lodged. However, because structural errors are generally subject to automatic reversal, *Neder*, 527 US at 8; *Washington*, 548 US at 218-219, and the caselaw illustrates the uncertainty regarding when structural errors should be subjected to plain-error analysis, the extension of plain-error analysis in this case is limited to only unpreserved structural error that results from the improper denial of the right to public voir dire. Accordingly, the majority's opinion should not be broadly interpreted to extend plain-error review to any other structural errors but instead should be limited to the circumstances of this case.

7

specific injury,'" *Waller*, 467 US at 49 n 9, quoting *United States ex rel Bennett v Rundle*, 419 F2d 599, 608 (CA 3, 1969) (alterations in original). Accordingly, "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." *Waller*, 467 US at 49.

Although I disagree with the majority's equivocal stance on the third prong of the plain-error test with regard to the denial of the right to public voir dire, my primary quarrel with the majority opinion is with the route it takes to support the conclusion that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Carines*, 460 Mich at 763. I do not agree that the presence of the venire is a proper consideration in gauging the final prong of the plain-error analysis. Although the veniremembers are members of the public, if that fact is relevant to the plain-error analysis of the structural error at issue in this case, the right to public voir dire guaranteed by *Presley*, 558 US at ___; 130 S Ct at 724, loses all meaning. Specifically, veniremembers will *always* be present during voir dire; therefore, under the majority's approach, the prosecution will *always* be able to argue that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Carines*, 460 Mich at 763. Moreover,

> [t]he long-established tradition of open voir dire contemplates ensuring that members of the general public, *external to the judicial process*, have the opportunity to observe the proceedings. As the Supreme Court found in *Press–Enterprise* [*Co v Superior Court of California, Riverside Co*, 464 US 501, 506-507; 104 S Ct 819; 78 L Ed 2d 629 (1984)], "beginning in the 16th century, jurors were selected *in* public," meaning that the doors of the "towne house" or other "common place" were open to "so many as will or can come so neare as to heare it." By contrast, a voir dire is neither "public" nor "open" if the only members of the public allowed to attend are those who, having received juror summonses, are required to be there and

8

part of the judicial process itself. Indeed, if the presence of potential jurors were sufficient to "safeguard[]" the values underlying the Sixth Amendment, it would seem that spectators could *always* be excluded. [*United States v Gupta*, 650 F3d 863, 876 (CA 2, 2011) (Parker, J., dissenting) (citation omitted).]

Thus, although the majority correctly rejects the prosecution's argument that the right to public voir dire is subject to waiver, by considering the presence of the venire, the majority's analysis risks essentially adopting the very rule that it purports to reject because a defendant will never be able satisfy the requirements to overcome forfeiture under the plain-error analysis.[7]

The majority contends that my concerns are merely overwrought hand wringing because, under the majority's approach, the venire's presence is not "dispositive." *Ante* at 25 n 102 (emphasis omitted). However, by considering the venire's presence at all, the majority places a heavy thumb on the delicate scales of justice. Indeed, because the venire will *always* be present during voir dire, the majority's approach will *always* weigh in favor of denying the defendant relief. Given the importance that the Framers placed on the right to a public trial, *Waller*, 467 US at 49 n 9, I would not hamstring a defendant's efforts to vindicate that right by stacking the deck against the defendant before the analysis even begins.

---

[7] Moreover, the exclusion of a defendant's family has been given special consideration in this area of the law. See, e.g., *Watters v State*, 328 Md 38, 48; 612 A2d 1288 (1992) (stating that excluding a defendant's family deprives the family of the ability "to contribute their knowledge or insight to the jury selection" and prevents the venire from seeing the interested individuals); *United States v Garland*, 364 F2d 487, 489 (CA 2, 1966) (stating that "it [was] improper to exclude any portion of the public, *particularly a member of a defendant's family*" without sufficient justification) (emphasis added). Relying on the venire alone to serve the purpose of public participation in the jury-selection process ignores the unique role of a defendant's family in the courtroom.

9

I agree with the majority, however, that concerns regarding the fairness, integrity, and public reputation of the voir dire process under the facts of this particular case are lessened by the fact that the circuit court transcript reveals that "there were no objections to either party's peremptory challenges of potential jurors, and that each party expressed satisfaction with the ultimate jury chosen." *Ante* at 25-26. "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury. . . . It is the only mechanism, and the only safeguard a defendant has, for ensuring the right to an impartial jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (lead opinion by MALLETT, J.). The public's involvement in the voir dire process assists in effectuating the purpose of voir dire, in part, because it allows the public to see that the defendant "is fairly dealt with and not unjustly condemned" via selection of an unbiased jury. *Waller*, 467 US at 46 (citations and quotation marks omitted). Moreover, "the presence of interested spectators may keep [the defendant's] triers keenly alive to a sense of their responsibility and to the importance of their functions . . . ." *Id.* (citations and quotation marks omitted). Although the transcript showing "a vigorous voir dire process," *ante* at 25, does not satisfy these goals as well as the actual presence of observers, it does at least provide some assurance that the voir dire process served its purpose. Accordingly, when weighing the fourth plain-error prong in relation to the improper denial of the right to public voir dire, a court should rely most heavily on evidence indicating whether the purpose of voir dire was satisfied. If relevant evidence is not available, or if the court is

10

left with serious concerns regarding whether the voir dire process served its purpose, the court should not hesitate to conclude that the fairness, integrity, or public reputation of judicial proceedings were seriously affected and that a new trial is required.

<div style="margin-left: 50%;">
Michael F. Cavanagh
Marilyn Kelly
Diane M. Hathaway
</div>