# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYWON DEON HAMILTON,

Defendant-Appellant.

UNPUBLISHED
July 6, 2017

No. 329845
Wayne Circuit Court
LC No. 15-002167-01-FH

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c(1)(a) (sexual contact with a person under 13), dissemination of sexually explicit material to a minor, MCL 722.675, and aggravated indecent exposure, MCL 750.335a(2)(b). He was sentenced as a fourth habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for the CSC-II conviction, 10 to 15 years' imprisonment for the distribution of sexually explicit material to a minor conviction, and 10 to 15 years' imprisonment for the aggravated indecent exposure conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions are related to an encounter between defendant and the minor complainant, MD, in the fall of 2012, when MD was in second grade. At trial, the prosecution called three witnesses: MD; MD's mother, Miieshia Duhart; and City of Detroit Police Investigator Kimberly Turner. MD testified that defendant called her into the bathroom while he was babysitting MD and her younger siblings. When she arrived at the bathroom, defendant was unclothed. MD tried to walk away, but defendant pulled her back inside the bathroom. He then showed her a video on his cellular telephone which depicted him "humping" his girlfriend without any clothes on.[1] MD testified that, while the video was playing, defendant was "messing with his private part[,]" and "[w]hite stuff came out [of] the top." Later the same night, while MD was lying in bed with her younger siblings and defendant, defendant, while looking at his cellular telephone, put his hand inside her pajama pants and rested it on her "cookie." When

---

[1] MD testified that she learned the word "humping" from defendant.

-1-

asked what body part she calls her cookie, MD explained that it is the "middle part" where pee comes out when she goes to the bathroom. Soon afterward, MD heard Duhart return home and call out for defendant to open the front door, prompting MD to tell defendant that her mother was asking him to open the door. Before leaving MD's room to assist Duhart, defendant said, "Don't tell or I'm going to spank you." MD did not immediately disclose the events to any friends or family members. However, she testified at trial that she first disclosed the incident to Duhart.

Duhart testified that MD disclosed the incidents to her in October 2013, after the family had moved to another house. At the time, MD was cleaning a bathroom and called her mother inside, stating that she had something to tell Duhart. Duhart explained that MD said defendant called her into the bathroom on an earlier occasion and showed her a video of himself and his girlfriend. MD also told Duhart that defendant was naked when he showed her the video and that he was "playing with [him]self." Duhart asked MD if defendant touched her, and MD said, "Not then," but went on to explain that defendant had put his hand in MD's pants in the morning on a different day, "right before they got up to get ready for school . . . ."

Investigator Turner testified that she took a voluntary statement from defendant on December 12, 2013. Defendant denied MD's allegations, but acknowledged making a sexual video where he engaged in sexual intercourse with two women at the same time, one of whom was the same woman, defendant's girlfriend, that MD identified as participating in the sexual video that defendant showed her on his cellular telephone. Defendant explained that the video was too dark to see anything on the screen but shadows. He did not know how MD had become aware of its existence.

## II. PLEA AGREEMENT

Defendant first argues that the trial court erred by rejecting a plea agreement based solely on the sentencing judge's stated policy of never ordering sentences that fall outside of the minimum range calculated under the sentencing guidelines. According to defendant, because of this alleged error, this Court ought to order specific performance of the plea agreement. We disagree.

When the trial court refused to accept the parties' plea agreement, defendant raised no objection to the professed sentencing policy and, instead, chose to withdraw his plea and proceed to trial. Thus, this issue is unpreserved, see *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and reviewed for plain error affecting his substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); see also *People v Plumaj*, 284 Mich App 645, 650; 773 NW2d 763 (2009). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763 (citation omitted). Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks and citation omitted; second alteration in original).

On May 7, 2015, the parties reached a plea agreement, under which the prosecution agreed to dismiss the charges against defendant and withdraw the habitual offender notice if defendant pleaded guilty to assault with intent to commit penetration, MCL 750.520g(1), with a sentence of 18 months to 10 years' imprisonment. The trial court immediately expressed reluctance to accept a plea agreement that called for an 18-month minimum sentence in light of the serious criminal sexual conduct offense involving a minor child with which defendant had been charged. After continuing to discuss with the parties whether the plea agreement was appropriate, the trial court briefly adjourned the hearing to allow the prosecution to calculate the minimum guidelines range for the original charges. After a brief recess, the prosecution advised the trial court that the parties believed that the recommended minimum sentence range for the original charges, without the habitual offender enhancement, was 5 to 17 months' imprisonment.[2]

When the trial court questioned defendant about the plea agreement, defendant initially stated that he did not want to accept the plea. After speaking with his attorney, however, defendant chose to plead guilty under the terms of the agreement. The trial court accepted defendant's plea and directed the parties to return on May 21, 2015 for sentencing.

At the sentencing hearing, the trial court reviewed the accuracy of the presentence investigation report ("PSIR") and the sentencing information report ("SIR") on the record and reduced the number of points assessed under several variables. The parties determined that defendant's reduced score placed him in the E-II cell, which called for a recommended minimum sentence range of 19 to 38 months' imprisonment. The trial court observed that the plea agreement called for a sentence that was below the guidelines recommendation and said, "I can't accept that. I don't do any sentencing outside of guidelines in this courtroom." The trial court told defendant that he could accept a minimum sentence of 19 months or go to trial, and defendant chose to withdraw his plea and proceed with trial.

To the extent that defendant further contends that the trial court erred by relying on a personal sentencing policy as the basis for rejecting the parties' plea agreement, thereby contravening Michigan's policy of imposing individualized sentences, we disagree with this assertion.

"When a prosecutor and a defendant agree to a specific sentence disposition in exchange for a guilty plea, the trial court can either accept or reject it or defer action until the court has had an opportunity to consider the presentence report." *People v Johnson*, 210 Mich App 630, 632; 534 NW2d 255 (1995), citing *People v Killebrew*, 416 Mich 189, 206-207; 330 NW2d 834 (1982), and MCR 6.302(C)(3). If a trial court accepts a sentence agreement before reviewing the PSIR, it is not bound by the sentence agreement until it has had an opportunity to do so. *People v Baker*, 215 Mich App 606, 608; 547 NW2d 62 (1996). In other words, "the judge must have considered the presentence report before final acceptance of the sentence agreement." *Killebrew*,

---

[2] The parties' initial calculation of defendant's sentencing guidelines range was incorrect. It was later determined that scoring the sentencing guidelines resulted in a recommended minimum range of 19 to 38 months.

416 Mich at 207. Should the trial court ultimately choose to reject an agreement that includes a sentence for a particular term or within a stated range, it must give the defendant an opportunity to affirm or withdraw his plea. *Id*.; MCR 6.302(C)(3).

Here, the trial court accepted defendant's plea at the May 7, 2015 hearing, before defendant's PSIR and SIR were prepared or reviewed. Accordingly, at that time, it was not yet obligated to sentence defendant pursuant to the terms of the sentence agreement. MCR 6.302(C)(3); *Baker*, 215 Mich App at 608. Importantly, before accepting defendant's plea, the trial court questioned the parties about the minimum range calculated under the sentencing guidelines for the offense and was misinformed by the parties that the sentence agreement fell within the applicable guidelines range. Later, when the PSIR and SIR were finalized, it became apparent to the trial court that the sentence agreement called for a minimum sentence that fell below the applicable guidelines range. Dissatisfied with such a result, the trial court advised defendant that it would not impose the agreed-upon sentence and, consistent with the requirements of MCR 6.302(C)(3), allowed defendant to withdraw his plea. Thus, the procedural requirements of MCR 6.302(C)(3) were satisfied.

Further, the trial court's rejection of the plea agreement did not amount to plain error, based on Michigan's individualized sentencing policy, merely because the trial court stated on the record that it does not impose sentences outside of the guidelines range. As defendant contends, a sentence is invalid when it is imposed pursuant to a "local sentencing policy rather than individualized facts." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997) (citation omitted). For example, in *People v Chapa*, 407 Mich 309, 310-311; 284 NW2d 340 (1979), the Michigan Supreme Court held that the trial court erred by declining to exercise its sentencing discretion and, instead, sentenced the defendant on the basis of a local policy of imposing harsh penalties on heroin dealers. Here, however, the court did not impose *any* sentence based on defendant's plea agreement with the prosecution, let alone a sentence that failed to reflect the particular circumstances of defendant's case. Defendant maintains that the trial court impermissibly relied on a sentencing policy, rather than making an individualized determination regarding the appropriate sentence, but this argument fails. All of the cases on which defendant relies in his brief on appeal were cases decided before either of the Michigan sentencing guideline schemes were in place. See *People v Hegwood*, 465 Mich 432, 437-439; 636 NW2d 127 (2001) (explaining that judicial sentencing guidelines promulgated by the Michigan Supreme Court were in effect from 1983 to 1999, at which time the statutory sentencing guidelines, MCL 777.1 *et seq*., went into effect). As a result, this authority provides no insight regarding the ways in which the sentencing guidelines take into account and facilitate execution of "the principle that sentencing must be individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing . . . ." *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980). See also *Chapa*, 407 Mich at 311; *People v McFarlin*, 389 Mich 557, 574; 208 NW2d 504 (1973).

"[T]he very purpose of the sentencing guidelines is to facilitate proportionate sentences" based on the severity of the sentencing offense and the defendant's criminal history, *People v Smith*, 482 Mich 292, 305; 754 NW2d 284 (2008), and scoring the guidelines necessarily results in an individualized determination of a sentence that "is a function of the seriousness of the crime and of the defendant's criminal history." *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). See also MCL 777.21 and 777.22 (describing the way in which the

sentencing guidelines are scored); MCL 777.31 to MCL 777.57 (describing the offense and prior record variables). Cf. *People v Milbourn*, 435 Mich 630, 658; 461 NW2d 1 (1990) (stating, with regard to the former judicial sentencing guidelines, "[W]e believe that it is safe to assume that in the eyes of the vast majority of trial judges who have chosen to impose sentences within the guidelines ranges, the guidelines reflect the relative seriousness of different combinations of offense and offender characteristics"). Accordingly, given the fact that application of the sentencing guidelines necessarily results in an individualized determination of a proportionate minimum sentence range, defendant has failed to show that the trial court's stated policy of sentencing defendants within the sentencing guidelines constitutes a plain error affecting his substantial rights for the reason he claims. See *Carines*, 460 Mich at 763-764.

Last, it is important to note that "[i]f the court concludes that the sentence is inappropriate to the circumstances or the offender, it is obliged to reject the plea and inform the defendant that it will not accept the plea or be bound by the agreement." *People v Johnson*, 210 Mich App at 632492. Considering, in context, the trial court's comments at the plea hearing and the initial sentencing hearing, it is apparent that the trial court believed that defendant deserved a much greater sentence than the 18-month minimum proposed under the plea agreement in light of the serious nature of the charges involving a minor child. Thus, we cannot conclude that the trial court's rejection of the plea was improper. For all of these reasons, we conclude that defendant has failed to establish a plain error affecting his substantial rights, or that he is entitled to specific performance of the plea agreement. See *Carines*, 460 Mich at 763-764.

### III. MRE 803A HEARSAY TESTIMONY

Next, defendant challenges the admissibility, under MRE 803A, of Duhart's testimony concerning MD's statement about the sexual contact with defendant. More specifically, defendant argues that the evidence did not meet the foundational requirements of MRE 803A where the trial court did not consider whether (1) MD's statement to Duhart was MD's first corroborative statement, (2) the delay between the date of the charged offenses and MD's disclosure was motivated by MD's fear, and (3) sufficient notice had been provided to defendant of the prosecution's intention to admit Duhart's statement at trial. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) (citations omitted). In the trial court, defendant objected to the admission of Duhart's testimony on several bases. For example, defense counsel claimed that he was not given proper notice of the prosecution's intention to admit Duhart's testimony in compliance with MRE 803A. Defense also challenged MD's delay

-5-

in disclosing the sexual contact with defendant. Accordingly, to the extent defendant now advances similar arguments on appeal, we note that these issues have been preserved for our review.[3] However, where defendant now criticizes the trial court's consideration of the foundational requirement of MRE 803A that MD's statement be the first corroborative statement about the sexual contact with defendant, we note that this issue was not preserved in the trial court. A review of the record illustrates this important point.

When the trial court questioned the prosecution about its intentions with regard to admitting Duhart's statement, the prosecution informed the trial court that Duhart's testimony was important because MD had told Duhart about the sexual contact with defendant. Defense counsel then stated as follows:

> I don't think that – as I read the [preliminary examination] transcript, [MD] talked to the mother's sister, an aunt, seconds before or shortly before she talked to [Duhart]. That's how the transcript reads to me. *But it wasn't -- that was a couple of years later, and that's the point*. [Emphasis added.]

When the trial court stated that it would need to see how matters relating to MD's statement to Duhart "play[ ] out," declining to rule at that time, defense counsel, the prosecution and the trial court engaged in the following colloquy regarding the timing of MD's disclosure to Duhart:

> *Defense Counsel*: But Judge, the prosecutor is going to agree with me. That was years later. It wasn't like right after the incident. It was a substantial period of time --
>
> *The Court*: Well, that's of no moment.
>
> *Defense Counsel*: No, the tender years law says it has to be almost like spontaneous –
>
> *The Court*: Yes.
>
> *The Prosecutor*: No.
>
> *Defense Counsel*: -- and soon thereafter.
>
> *The Court*: Spontaneous, but it doesn't have to be immediately after the incident.

---

[3] "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks, footnote and citation omitted).

*The Prosecutor*:  It could be years later, as long as the child is under the age of ten.

*The Court*:  That's all it amounts to.

*Defense Counsel*:  Well, the case law doesn't comport with that. [Footnote added.][4]

Therefore, our review of the record, including the balance of Duhart's testimony,[5] confirms that the only objection to Duhart's testimony with regard to whether MD "made more than one corroborative statement about the incident [with defendant]," MRE 803A, was defense counsel's very brief and cursory reference, in passing, to whether MD first disclosed the sexual contact with defendant to Duhart or MD's godmother.  However, as noted above, defense counsel made it very clear that the delay in MD's disclosure of the sexual contact with defendant was the key point being pursued.  Accordingly, to the extent that defendant now argues on appeal that the trial court ought to have conducted further inquiry into whether MD made a corroborative statement to anyone before Duhart, we again note that defendant did not advance this argument in any meaningful manner before the trial court, and therefore did not properly preserve this evidentiary objection for our review.  *Aldrich*, 246 Mich App at 113.

In *People v Girard*, 269 Mich App 15, 19; 709 NW2d 229 (2005), this Court, in the context of considering an unpreserved evidentiary error, concluded as follows:

> To prevail in a claim of unpreserved nonconstitutional error, "[t]he defendant must show a plain error that affected substantial rights.  The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." [*Carines*, 460 Mich at 774].

MRE 803A codified what was commonly known as the "tender years" exception to the rule against hearsay.  *People v Douglas*, 496 Mich 557, 573; 852 NW2d 587 (2014).  The rule provides:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the

---

[4] At this point, the trial court invited defense counsel to direct the trial court's attention to case law in support of his arguments concerning the delay in disclosure as it pertained to the foundational requirements of MRE 803A.

[5] During Duhart's testimony, defense counsel renewed his objection on the basis of MRE 803A, specifically noting that his objection pertained to the "tim[ing]" of MD's statement to Duhart. Notably, defense counsel did not state that the objection was based on the fact that MD's statement to Duhart was not the first corroborative statement that MD made.  It is clear to us that defense counsel was referring to the delay in MD's disclosure of the sexual contact with defendant.

extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement. [MRE 803A.]

In *Douglas*, the Michigan Supreme Court recognized that where a child complainant's disclosure of alleged sexual abuse is not the "first corroborative statement[,]" MRE 803A will not permit its admission at trial. *Douglas*, 496 Mich at 575. In *Douglas*, the prosecution had conceded before trial that the minor child's disclosure of alleged fellatio with the defendant to a forensic interviewer was not the first corroborative statement regarding the matter, and that the minor child had already disclosed the alleged instance of sexual abuse to her mother. *Id*. In the instant case, a review of the record confirms that during the preliminary examination, MD testified that she told Bridgette[6] Coffee, who she described as her godmother, about the sexual abuse, before she told Duhart.[7] While defendant places any error relating to the admission of Duhart's statement on the trial court, we note that defendant did not advance a meaningful argument before the trial court regarding whether Duhart's testimony contained MD's first corroborative statement. Consequently, defendant's assertion in his brief on appeal that the trial court "did not resolve the issue of whether [MD's] alleged statements were first made to [Duhart] or [Coffee]" is curious, where the trial court was simply not asked to do so. In any event, even accepting defendant's unpreserved argument that error occurred, we are not

---

[6] The correct spelling of Coffee's first name is unclear from the record. It was intermittently spelled as Bridgette, Bridget, Bridgid, or Brigid.

[7] At trial, MD stated that she told Duhart first about the sexual contact with defendant, and it appears from the record of MD's cross-examination that any disclosure by MD to Coffee was made almost contemporaneously with her disclosure to Duhart.

persuaded that defendant incurred any prejudice. Put another way, defendant has not established that the unpreserved error "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763 (citation omitted). In reaching this conclusion, we find the Michigan Supreme Court's analysis in *People v Gursky*, 486 Mich 596; 786 NW2d 579 (2010), to be of guidance.[8]

In *Gursky*, the Michigan Supreme Court offered the following legal principles to consider in determining whether the erroneous admission of evidence pursuant to MRE 803A was harmful:

> Michigan law provides that where a hearsay statement is not offered and argued as substantive proof of guilt, but rather offered merely to corroborate the child's testimony, it is more likely that the error will be harmless. Moreover, the admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence. This Court has cautioned, though, that the fact that the statement [is] cumulative, standing alone, does not automatically result in a finding of harmless error. . . . [Instead, the] inquiry into prejudice focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful. This may be even more likely when the hearsay statement was made by a young child, as opposed to an older child or adult. However, if the declarant himself testified at trial, any likelihood of prejudice was greatly diminished because the primary rationale for the exclusion of hearsay is the inability to test the reliability of out-of-court statements[.] Where the declarant himself testifies and is subject to cross-examination, the hearsay testimony is of less importance and less prejudicial. [*Id*. at 620-621 (footnotes and citations omitted).]

As an initial matter, we observe that the prosecution expressly confirmed during trial that Duhart's testimony was offered to corroborate the testimony of MD. The prosecution did so in response to the trial court's questions during Duhart's testimony, outside of the presence of the jury. *Id*. at 620. We also note that MD testified herself during trial, therefore alleviating any prejudice to defendant, and the reliability of her allegations, recounted to Duhart, were vigorously challenged by defense counsel during the course of cross-examination. *Id*. at 621. Further, MD's emotional reactions during her conversation with Duhart were properly allowed as evidence, where reactions are not considered hearsay and are, as the Michigan Supreme Court has clarified, "perfectly admissible at trial." *Id*. at 625. At trial, Duhart described MD as looking "real sad" in the moments before she told Duhart about the sexual contact with defendant, as

---

[8] We acknowledge that in *Gursky*, the Michigan Supreme Court undertook an analysis of whether evidence erroneously admitted pursuant to MRE 803A was harmless where the claim of error "involve[d] preserved, non-constitutional error." *Gursky*, 486 Mich at 619.

well as being apprehensive and hesitant about sharing the information regarding the sexual contact with defendant.

While the instant case did present a scenario where the allegations against defendant essentially amounted to a "credibility contest[,]" *id*. at 620-621, it is important to note that defendant himself corroborated a key portion of MD's recitation of the relevant facts involving the sexual contact with defendant. Specifically, during questioning by Investigator Turner, while defendant denied (1) engaging in sexual contact with MD and (2) showing MD a video on his cellular telephone with sexual content, he conceded that he did have a video on his cellular telephone where he engaged in sexual relations with two women at the same time.[9] Notably, one of the women defendant named as participating in the sexual interaction on the video was his girlfriend. Similarly, MD stated that defendant's girlfriend was in the video that defendant showed her on his cellular telephone. Accordingly, MD's testimony was corroborated in part by defendant's own admission of having a video with sexual context on his cellular telephone consistent with the video that MD described. We also note that while there were inconsistencies in MD's testimony as a whole, she was very clear, concise and detailed in her recollection of the sexual contact at defendant's hands. Also, defense counsel vigorously cross-examined MD regarding her recollection of the sexual contact with defendant, and the series of events that took place afterward. Having considered "the nature of [any] error and assess[ing] its effect in light of the weight and strength of the untainted evidence[,]" *id*. at 620, we conclude that defendant has not demonstrated that any error in the admission of Duhart's testimony affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763.

We are also not persuaded that reversal is necessary with regard to defendant's additional arguments concerning the applicability of MRE 803A. Although the prosecution did not file a written notice of intent in this case, defense counsel's statements at trial clearly show that he was aware that hearsay statements would be introduced under MRE 803A and that he was prepared to address these statements. Accordingly, despite the prosecution's failure to provide formal notice, it nonetheless provided notice "sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement." MRE 803A. Thus, there is no basis for concluding that any error in this regard was outcome determinative. See *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). Defendant also claims that the hearsay testimony was inadmissible because of the unexplained delay in MD's disclosure. See MRE 803A(3). This argument is unsupported by the record. The court rule specifically allows the admission of a delayed corroborative statement when the delay is "excusable as having been caused by fear or other equally effective circumstance . . . ." MRE 803A(3). MD's testimony established that the delay in disclosure was motivated by her fear that defendant would physically abuse her, and such fear was certainly reasonable under the circumstances where the record confirms that defendant threatened to spank her if she disclosed the sexual abuse. *People v Dunham*, 220 Mich App 268, 272; 559 NW2d 360 (1996).

---

[9] In defendant's own words during his interview with Investigator Turner, he "wouldn't touch [MD] when I've got three females that I'm dealing with [at] one time – when I'm dealing with at one time."

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant contends that he is entitled to reversal of his convictions where he was denied the effective assistance of counsel at trial.[10] We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must bring a motion for a new trial or request a *Ginther*[11] hearing to establish the basis for his claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did not move for a new trial or request an evidentiary hearing pursuant to *Ginther*. Therefore, this issue is not preserved for appeal. When the defendant's ineffective assistance of counsel claim was not preserved, this Court's review is limited to errors that are apparent from the record on appeal. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish a claim of ineffective assistance of counsel, the defendant must show that: (1) trial counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn,* 491 Mich 642, 669-670; 821 NW2d 288 (2012) (footnote omitted), citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland*, 446 US at 694. This Court presumes that trial counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. To successfully mount a claim of ineffective assistance of counsel, a defendant "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015).

Defendant argues that he was denied the effective assistance of counsel because trial counsel did not object to the trial court's instruction, provided to the jury at the beginning of the trial, informing the jury that the trial court would not allow the jury, during the course of deliberations, to have any testimony played back or to be provided with transcripts of the proceedings. The trial court encouraged the jurors to document for themselves, by handwriting on notepads, any information they deemed necessary gleaned from a witness during trial.

The trial court's instruction was not consistent with MCR 2.513(P), which governs the jury's ability to review testimony during its deliberations and provides as follows:

---

[10] For the purpose of clarity in our analysis, we will refer to defense counsel as "trial counsel" in this portion of our opinion.

[11] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Thus, when a trial court instructs a jury in a manner that precludes the possibility of reviewing trial testimony, it errs by doing so. *People v Carter*, 462 Mich 206, 208; 612 NW2d 144 (2000).[12] However, defendant has not overcome the strong presumption that trial counsel's decision to not object resulted from sound trial strategy. *Cooper*, 309 Mich App at 80. For example, trial counsel may have chosen not to draw the jury's attention to the trial court's instruction. Similarly, we note that trial counsel pursued a motion for mistrial following the trial court's preliminary instructions to the jury, and therefore may have felt it prudent to not raise an objection shortly before pursuing a dispositive motion that could impact the rest of the lower court proceedings. In any event, even if we were to accept defendant's contention that trial counsel's performance fell below an objective standard of reasonableness, defendant has not demonstrated a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected to the jury instruction.

Defendant relies on *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976) (concluding that the harmless error doctrine was inapplicable to preemptive instruction foreclosing rereading of testimony because it resulted in lack of factual basis for review), and *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974) (concluding that the trial court's abuse of discretion in rejecting a reasonable request from the jury required reversal of the defendant's conviction because there was no way to determine from the record the extent of the jury's confusion regarding the requested testimony), in support of his theory that this Court would have been bound to reverse his conviction had trial counsel preserved a challenge to the trial court's jury instruction. However, defendant's claim of error is distinguishable in that it is presented as a

---

[12] We note that *Carter* involved the former version of MCR 6.414(H), which was repealed in 2011 and replaced by MCR 2.513(P). However, the substantive language at issue is largely the same; the former rule stated:

If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [*Carter*, 462 Mich at 210-211.]

claim of ineffective assistance of counsel—rather than a direct challenge to the propriety of the jury instruction at issue—and, therefore, requires a showing of prejudice.[13]  See *Vaughn,* 491 Mich at 669.  More importantly, both *Smith* and *Howe* were decided over 40 years ago, and the Michigan Supreme Court has since recognized that the "automatic reversal rule" relied on in those cases[14] was superseded by the plain error rule set forth in *Carines*.  *People v Tucker*, 469 Mich 903; 669 NW2d 816 (2003).  As such, defendant must affirmatively demonstrate that he was prejudiced by trial counsel's decision to not object to the jury instruction.

Our review of the record does not yield any indication that the trial court's instruction had any effect on the outcome of the lower court proceedings.  The trial court did not repeat the instruction during the final jury instructions or otherwise refer to the jury's ability, or inability, to review testimony.  The trial court also did not include the challenged instruction in the written instructions provided to the jury before its deliberations.  There is also nothing in the record to suggest that the challenged instruction may have caused the jury to refrain from asking to review trial testimony.[15]  Accordingly, defendant has failed to establish the factual predicate to substantiate his ineffective assistance of counsel claim, and we are not persuaded that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability, but for trial counsel's actions, that the outcome of defendant's trial would have been different.

## V.  CONCLUSION

Defendant has failed to establish a plain error affecting his substantial rights, or that he is entitled to specific performance of the plea agreement.  Defendant has not made a showing of plain error affecting his substantial rights with respect to his challenge to the admission of Duhart's testimony on the basis that it was not MD's first corroborative statement regarding the sexual contact with defendant.  We are also not persuaded that any other alleged errors relating to the foundational requirements of MRE 803A were outcome determinative.  Finally, defendant

---

[13] Because the propriety of the instruction was not raised in defendant's statement of the questions presented, this issue is not properly before this Court.  *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003).

[14] *Tucker* only explicitly referred to the "automatic reversal rule" set forth in *Smith*.  *Tucker*, 469 Mich at 903.  However, the Court's reasoning is equally applicable to *Howe*, which was relied upon by the *Smith* Court.  See *Smith*, 396 Mich at 111.

[15] During its deliberations, the jury raised two issues in written notes to the court.  The questions that arose during the jury's deliberations were not addressed on the record, but the physical notes and responses were included in the lower court file.  We have closely reviewed the jury notes, as well as the trial court's response.  To the extent that one of the notes from the jury pertained to the only exhibit admitted at trial, defendant's statement to Investigator Turner, we note that the trial court instructed the jury during its final instructions that if it sought to review any exhibits, the jury should "just ask for them with a note."  With regard to the second note the jury sent to the trial court, there is nothing in that note to suggest that the jury sought to review testimony or evidence.

has not established that trial counsel's performance fell below an objective standard of reasonableness, or that, but for trial counsel's performance, there is a reasonable probability that the result of his trial would have been different.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood