*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESSEX, Minors.

UNPUBLISHED
June 6, 2019

No. 346600
Saginaw Circuit Court
Family Division
LC No. 17-035190-NA

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to KE and AE pursuant to MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm to child if returned to parent). We affirm.

## I. BACKGROUND

This case arose after respondent and the father of the children took the children to a Rite Aid parking lot in Saginaw on March 5, 2017, where respondent intended to confront her ex-boyfriend and engage in a fight with her ex-boyfriend's girlfriend. The children's father shot at individuals in the parking lot before getting back into the car, after which respondent drove off in an attempt to elude the police. The children's father was arrested and charged with five counts of assault with intent to commit murder. Respondent was charged with being an accessory after the fact.

On March 29, 2017, the Department of Health and Human Services (DHHS) filed a petition requesting that the court take jurisdiction of the children. In a March 30, 2017 amended petition, it was alleged that respondent participated in the criminal incident on March 25 and that she admitted that she placed the children in danger by having them present during the incident. The amended petition also alleged that respondent had a history of engaging in inappropriate behavior in the presence of the children, including that in January 2017 she was asleep in her vehicle with the children and that when the police arrived she began to fight with them in the presence of the children. Respondent pleaded guilty to assaulting/resisting/obstructing a police officer as a result of the incident and was serving a probationary sentence pursuant to the Holmes Youthful Trainee Act, MCL 762.11 *et seq.*

At a hearing on May 22, 2017, the trial court accepted a plea from respondent. Respondent pleaded no contest to the allegation that she drove to the Rite Aid parking lot for the purpose of engaging in a fight and that the children were in the vehicle when the altercation resulted in shots being fired. She admitted that she was arrested and charged with accessory after the fact as a result of her involvement in the incident. She also admitted to the allegation that she had a history of engaging in inappropriate behaviors in the presence of the children as demonstrated by the January 2017 incident and that she was on probation. After accepting the plea, the court took jurisdiction over the children.

Over the months that followed, respondent participated in a number of services, including parenting classes, a psychological evaluation, a protective capacity assessment, individual and substance abuse counseling, drug screens, and supervised parenting time. She completed her parenting classes, but she did not show any benefit from them and did not demonstrate an ability to appropriately parent the children and to keep them safe. Attempts to have parenting time in the community were unsuccessful because respondent made inappropriate comments to the children, allowed unknown people to know the location of the visitation, and allowed the children to Facetime with their incarcerated father. She initially had good attendance at her individual and substance abuse counseling but attended only one counseling session between January 16, 2018, and May 22, 2018. Respondent tested positive for marijuana on seven dates between November 2017 and April 2018 and did not appear for drug screens on 12 additional dates between October 2017 and June 2018. She was unable to obtain housing outside of Saginaw, which presented a safety concern for the children due to respondent's connections with gang activity in Saginaw and the vandalism of her home and her vehicle. As the case progressed, the children began to exhibit inappropriate and aggressive behavior at parenting time and at the foster home and daycare on parenting time days.

In July 2018, a supplemental petition was filed requesting termination of respondent's parental rights. At the conclusion of the hearing, the trial court found sufficient evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), and the trial court also found that termination was in the children's best interests.

## II. ANALYSIS

### A. ADJOURNMENT AND INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent first argues that the trial court denied her the right to due process by refusing to grant her motion for an adjournment of the September 4, 2018 termination hearing so that she could retain counsel to represent her at the hearing. The lower court record reveals that respondent moved to adjourn the termination hearing, which had been scheduled for a date in August, until after she entered a plea in her criminal case in late August. But respondent did not request an adjournment so that she could retain counsel. On August 8, the court adjourned the termination hearing until September 4 and advised that no additional adjournments would be granted. Respondent did not move to adjourn the September 4 hearing.[1] Her argument that she

---

[1] The court indicated that there were no other dates available in September for the hearing.

was denied procedural due process by the court's refusal to grant an adjournment so that she could retain counsel is neither preserved nor supported by the record. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008) (stating that an issue must be raised in the trial court to be preserved for appellate review). This Court's review is therefore limited to plain error affecting her substantial rights. *Id.*

Respondent has attached to her brief on appeal an affidavit from attorney Kent Greenfelder. In the affidavit, Greenfelder averred that on August 27 he agreed to represent respondent at the termination hearing because she was dissatisfied with her court-appointed attorney and that he contacted the referee on August 28 and advised that he was going to file an appearance and substitution of attorney so that he could represent respondent at the termination hearing. He also averred that he advised the referee that he had a prepaid vacation for the week of September 4 and that he asked for an adjournment of the September 4 hearing, which the referee denied. Greenfelder's affidavit is not part of the record below and, therefore, is not part of the record for this Court's review. See MCR 7.210(A)(1); see also see also *Tope v Howe*, 179 Mich App 91, 106; 445 NW2d 452 (1989) ("Materials outside the scope of the record may not be considered on appeal."). Even if we were to consider the affidavit, the facts stated therein are in contrast to the lower court record, which contains no appearance by Greenfelder, no substitution of attorney, no request to adjourn the September 4 hearing, no request to adjourn for the purpose of retaining counsel, and no indication that respondent was unsatisfied with appointed counsel's representation. Accordingly, respondent has failed to demonstrate plain error in her claim that the court denied respondent due process by denying the adjournment.

Respondent also argues that she was denied the effective assistance of counsel during the termination hearing because her court-appointed attorney failed to timely obtain copies of her drug screen results from the Saginaw County Health Department, which resulted in the trial court refusing to admit the results into evidence. "In analyzing claims of ineffective assistance of counsel at termination hearings, this Court applies by analogy the principles of ineffective assistance of counsel as they have developed in the criminal law context." *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988). Our review of respondent's unpreserved ineffective assistance of counsel claims is limited to errors apparent on the record. *In re AMB (On Remand)*, 248 Mich App 144, 231-232; 640 NW2d 262 (2001). "Whether . . . counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Parents have a right to counsel in parental rights termination cases. *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009). "The right to counsel includes the right to competent counsel." *Simon*, 171 Mich App at 447. To establish ineffective assistance of counsel, a respondent must show that counsel's performance was below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Effective assistance of counsel is strongly presumed. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

When respondent's counsel began questioning respondent about her drug screens at the health department, petitioner objected to the line of questioning because she had not been

provided the evidence and was unable to effectively respond to the evidence. The court agreed with respondent's counsel's suggestion that the court not admit the actual drug screening results, but permitted respondent to testify about the drug screens and the results. Therefore, while the exhibit which respondent sought to admit was not admitted, testimony regarding the contents of the document was permitted. Thus, assuming that counsel's performance was deficient for failing to timely obtain the drug screen results, respondent has failed to show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. This is particularly true because the favorable results from those screens nonetheless were admitted into evidence through respondent's testimony.

Respondent also argues that her counsel's performance was deficient because she failed to make a closing argument. Respondent acknowledges that all counsel waived their closing statements but contends that her counsel should have pointed out respondent's positive attributes. This Court has held that the waiver of closing arguments does not amount to ineffective assistance of counsel. *People v Burns*, 118 Mich App 242, 247-248, 324 NW2d 589 (1982). Further, respondent has not established the requisite prejudice. The court presided over the termination trial and heard all the evidence, and it took judicial notice of the all of the prior proceedings in this case. Respondent has not indicated what arguments could have been made by her counsel that would have resulted in a reasonable probability of a different result. Again, respondent fails to demonstrate that, but for counsel's failure to make a closing argument, the result of the proceedings would have been different. Consequently, respondent has failed to demonstrate that she was denied the effective assistance of counsel at the termination hearing.

## B. REASONABLE EFFORTS

Respondent argues that her right to due process was violated when DHHS failed to make reasonable efforts to rectify the conditions that led to the children's removal; DHHS did not provide a copy of respondent's psychological evaluation and her protective capacity assessment to her service providers. She maintains that her providers were unaware of the psychologist's finding that respondent might learn "a little bit better" with verbal rather than written instructions and of the protective capacity assessor's finding that respondent should have "trauma-focused" counseling. This Court reviews this unpreserved issue for plain error affecting respondent's substantial rights. *Utrera*, 281 Mich App at 8.

"Generally, when a child is removed from the parents' custody, the DHHS is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "While the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Here, DHHS referred respondent to individual counseling, substance abuse counseling, parenting skills training, drug screens, a psychological evaluation, and a protective capacity assessment. Respondent's counselor had been advised of the concerns that needed to be addressed, including respondent's past traumatic experiences and post-traumatic stress disorder,

anxiety, and substance abuse. She had discussed respondent's childhood sexual trauma with her and respondent indicated that the childhood trauma was not a problem for her. The fact that respondent denied that childhood trauma was an issue would prevent respondent from making progress in trauma-focused therapy. The counselor did not believe that her diagnosis would have changed had she been provided with the psychological evaluation and protective capacity assessment sooner, nor did the counselor believe that a referral to a trauma specialist was necessary. Although respondent participated in services, she did not consistently attend individual and substance abuse counseling, did not attend all of her drugs screens, and continued to test positively for substances. The caseworker, the guardian ad litem, and the court-appointed special advocate opined that she had not benefited from these services. The protective capacity assessor agreed that attending counseling consistently is an earmark of a person committed to making changes in order to parent a child, and that if respondent did not consistently attend counseling then it did not matter whether the counseling focused on trauma. Respondent has not demonstrated error because the record shows that DHHS made reasonable efforts to preserve the family.

## C. PARENTING TIME

Respondent contends that she was denied due process because DHHS failed to increase her parenting time as she made progress throughout the duration of the case. We review this unpreserved issue for plain error affecting respondent's parental rights. *Utrera*, 281 Mich App at 8.

The lower court record clearly reveals that DHHS's goal was to increase respondent's parenting time and to expand from supervised to unsupervised parenting time if respondent participated and demonstrated benefit from services and an ability to keep the children safe. Indeed, respondent's parenting time was increased from one hour twice per week to two hours twice per week and the foster care worker expanded the supervised visitation from the DHHS office to the community. However, problems arose with unknown persons being informed of the location of the community visits, with respondent allowing the children to Facetime with others and with their father, and with respondent making inappropriate comments to the children outside the earshot of the parenting time supervisor. As a result, parenting time was brought back to the DHHS office. Parenting time did not advance to unsupervised parenting time because safety concerns continued during parenting time; respondent did not show continued benefit from services; and respondent was having positive drug screens. As the case progressed, the court reduced respondent's parenting time to one three-hour visitation per week because the transitions after parenting time had become problematic. Given these circumstances, respondent has failed to show that DHHS's decision not to expand respondent's parenting time violated her right to due process and constituted plain error.

## D. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights. Whether the trial court properly found by clear and convincing evidence that a statutory ground for termination has been proven is reviewed for clear error. See MCR 3.977(K); *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). A finding of fact is clearly erroneous if, although there was evidence to support it, this Court is left

with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). Additionally, this Court must give regard to the special opportunity of the family court to judge the credibility of the witnesses who appeared before her. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court properly terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides that a court may terminate a respondent's parental rights if there is clear and convincing evidence that

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A "parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). The evidence presented supports a finding that there is a reasonable likelihood, based on the conduct or capacity of respondent, that the children will be harmed if returned to respondent's care. Respondent has a history of substance abuse, a factor properly considered when analyzing whether a child may be harmed if returned to his or her parent. *In re Moss*, 301 Mich App 76, 82; 836 NW2d 182 (2013). Respondent continued to test positively for marijuana during the pendency of this case, tested positively for cocaine once, and missed several scheduled drug screens, yet she continued to deny that she was using substances and made "excuses" for the positive screens. She failed to attend substance abuse counseling for two months which, combined with her lack of honesty with her counselor, thwarted progress in the counseling. Respondent's continued use of substances and denial of use demonstrates that she puts her own needs before the needs of her children, that she is not committed to the safety of the children, and that she fails to take responsibility for her actions. Respondent has a history of associating herself with a lifestyle that is dangerous to her children and the evidence showed no real or sustained progress in services to address the issue. The continued safety interventions on the part of the foster parents and parenting time supervisors during visitations showed that the children were not safe with respondent even in a supervised setting. Further, respondent's acknowledgement that she did not feel safe in her own living environment posed safety concerns for the children if they were to be returned to the home. Accordingly, the trial court did not clearly err in finding that there was a reasonable likelihood that the children would be harmed if returned to respondent's care.[2]

---

[2] Because only one statutory ground is needed for termination of parental rights, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), we need not address the additional statutory grounds found by the trial court.

## E. BEST INTERESTS

Respondent argues that the trial court erred in determining that termination of her parental rights was in the best interests of the children. This Court reviews a trial court's determination regarding best interests for clear error. *White*, 303 Mich App at 713.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Moss*, 301 Mich App at 90. "[T]he focus at the best-interest stage has always been on the child, not the parent." *Id*. at 87.

A trial court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

Respondent argues that it is not in the best interests of the children to terminate her parental rights because she loves the children and is "willing to do whatever it takes to be reunified" with them. A bond with the children is but one factor to be considered in determining what is in their best interests. Respondent's failure to fully comply with her case service plan over the course of the 17 months between the time the children were taken into care and the time of the termination trial does not support her contention that she was willing to do whatever it would take to have the children reunified with her. The evidence established that respondent had not adequately addressed her poor parenting skills, substance abuse, or housing issues, and as a result, the children would be at risk of harm in her care. During the course of the case, respondent completed parenting classes but failed to demonstrate benefit from the classes in her interaction with the children. She failed to attend individual and substance abuse counseling for over two months, tested positively for marijuana on several occasions, and tested positively for cocaine once. The children began to show signs that they were negatively impacted by respondent's behavior, including nightmares in which they were awakened by fear of monsters; negative behavior during parenting time; and aggressive behavior at the foster home and daycare on parenting time days. Although the children had a bond with respondent, they also had a bond

with the foster parents and referred to them as "mom and dad." The children did not ask about respondent in her absence and were doing well in their foster home. The children were three and four years of age and needed permanency, stability, and finality. Accordingly, we hold that the trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel