*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PARIS JAVON SMITH,

Defendant-Appellant.

UNPUBLISHED
September 24, 2019

No. 336122
Wayne Circuit Court
LC No. 15-008496-01-FC

AFTER REMAND

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

This matter is before this Court following our remand for an evidentiary hearing concerning Paris Javon Smith's claim of ineffective assistance of counsel arising from trial counsel's failure to present expert testimony at trial. *People v Smith*, unpublished per curiam opinion of the Court of Appeals, issued May 16, 2019 (Docket No. 336122). Because we agree with the trial court's conclusion that Smith failed to satisfy his dual burden of establishing deficient performance and resulting prejudice, we now affirm Smith's convictions and sentences.

## I. BACKGROUND

Smith previously appealed by right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, second offense, MCL 750.227b, arising from the shooting of Donzell Simmons and Antaun Williams. Williams, the prosecution's primary witness, testified that he and Simmons picked Smith up at a convenience store and drove to a residential area, where Smith shot Simmons in the head and Williams in the back of the leg, close to his buttocks. The prosecution also presented a surveillance video from the convenience store, capturing Smith inside the store and later getting into Simmons's truck. The prosecution presented the case as a "drug deal that had gone bad," based on Williams's testimony indicating that Simmons got out of the truck at

the convenience store to retrieve a small box from the back of the truck and handed it to Smith just before the shooting, saying, "[T]hat's good, man, you don't even got to touch that . . . ." Williams inferred that the exchange was a cocaine transaction, but did not see the box again after the shooting.

On appeal, Smith alleged that he was denied the effective assistance of counsel when his trial attorney failed to investigate and present testimony from experts in audio and video forensic analysis and crime scene reconstruction. *Smith*, unpub op at 6-8. In support of his claims of error, Smith produced reports from two proposed experts and his own affidavit alleging that trial counsel agreed that experts might be helpful, but that she did not believe the trial court would grant funds to retain them. *Id*. at 6. With respect to the expert reports, we explained:

> Smith submitted the report of audio and video forensic expert Edward Primeau. According to Primeau, he examined a disc containing two camera views and performed forensic video enhancement to determine whether the driver ever stepped out of the truck during the recording. He concluded "beyond a reasonable degree of scientific certainty that the driver's side door does not open, nor does the driver exit the vehicle on Camera 1."

> Smith also submitted the report of crime scene reconstruction expert Timothy D. Brown. Brown reviewed Williams's testimony and photographs of the truck in which Simmons and Williams were shot, and examined an exemplar of the truck involved for "dimensional detail." He concluded that it was "extremely unlikely" that "the crime could have been committed based on testimony of . . . Williams." Brown demonstrated the position that Williams testified that he was in when he was shot, i.e., lying face down on the floor behind the front seats. According to Brown, "in no way does the right rear portion of [Williams's] buttocks expose itself to be shot, by a front set occupant, with an 'upward' trajectory." Brown further opined that his attempt to reenact the events described by Williams showed "the unlikelihood of a shooter being able to position [himself] to allow the entry point and angle of the shot/injury described by Williams." Brown also reasoned that Williams's story was nearly impossible given the absence of blood matching Williams's DNA profile anywhere in the truck, that it would be nearly impossible for someone to climb over a person in the driver's seat in the manner Williams described, and that there was no evidence that a person disturbed the "pan of blood" in the center console, despite Williams's contention that he climbed into the front seat and then over Simmons's body. Brown concluded that "there exists a very strong likelihood that the series of events did not occur as described by the eyewitness." [*Id*. at 7-8 (footnote omitted; alterations in original).]

We reasoned that the proposed expert testimony might have provided a substantial defense by undermining the credibility of the prosecution's only eyewitness. *Id*. at 7-8. Because Smith's offers of proof showed that his proposed experts would have presented testimony favorable to the defense and that defense counsel decided not to investigate the possibility of expert testimony despite her belief that they might have been helpful to the defense, we remanded this matter to the trial court for further development and consideration of Smith's claim of error. *Id*. at 8, 14.

-2-

On remand, Smith waived his claim of error as it related to the proposed crime scene reconstruction expert. The trial court then heard testimony from Primeau regarding his expert opinion, from Smith's trial counsel concerning her strategy at trial, and from a police officer concerning the size of the convenience store parking lot. After further review of the parties' exhibits, the trial court concluded that Smith failed to "meet his burden of proving that [defense counsel] was ineffective" and that the evidence was "insufficient to show that there is a reasonable probability that the results would have been different had [defense counsel] presented video expert testimony." Although the trial court did not explicitly state that Smith had not established either prong of the dual-inquiry test for ineffective assistance of counsel, see *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012), we infer that the court found Smith's proofs wanting with respect to both deficient performance and resulting prejudice because, in reaching its decision, the trial court cited testimony concerning defense counsel's strategic decisions and the evidence of Smith's guilt presented at trial.

## II. ANALYSIS

"Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012). The trial court's factual findings are reviewed for clear error, while questions of constitutional law are reviewed de novo. *Id*. As stated by this Court in *Heft*, 299 Mich App at 80-81:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [Citations omitted.]

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy," and "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citations omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Having reviewed the transcripts from the trial court's evidentiary hearing, we agree with the court's conclusion that Smith failed to establish either prong of his ineffective assistance of counsel claim. Although Smith previously averred that counsel chose not to consult an expert in video forensic analysis because of strictly financial reasons, defense counsel testified otherwise on remand. Defense counsel agreed that she lacked financial resources to retain a video expert, but also testified that she did not feel an expert was necessary because, despite the poor quality of the surveillance footage, it should have been apparent to a lay person that Simmons never exited the truck. Had she believed that expert testimony was necessary, she would have sought a court appointed expert, as evidenced by her decision to do so with respect to a firearm and

-3-

ballistics expert. Defense counsel's testimony demonstrates that her decision to forego a video expert was a matter of trial strategy, and this Court will not second-guess an attorney's strategic decisions with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Furthermore, in light of Smith's waiver of the additional basis for this Court's earlier remand—i.e., counsel's failure to investigate or present evidence from a crime scene reconstruction expert—it is improbable that the absence of a video expert deprived Smith of a substantial defense. While we previously acknowledged the distinction between evidence that "Simmons could not be *seen on the video* getting out of the truck" and the stronger impeachment value of forensic evidence that Simmons definitively "*did not* get out of the truck," *Smith*, unpub op at 7, it remains true that the jury viewed the surveillance footage several times and, like defense counsel, may have been able to make that determination for itself. Additionally, even if Williams was incorrect about Simmons retrieving the box in the convenience store parking lot, the jury could have believed that the purported drug transaction occurred elsewhere. And without the additional proposed expert testimony concerning the impracticality of Williams's description of the events that occurred inside the truck during and after the shooting, we find it unlikely that Williams's credibility would have been so severely undermined that a different result would have been probable had Primeau's testimony been presented at trial.

We also agree with the trial court's conclusion that Smith failed to demonstrate a reasonable probability that the outcome of his case would have been different but for defense counsel's performance. Williams was the only eyewitness to the shooting and identified Smith as the shooter. Although his credibility was impeached at trial and may have been further undermined had Primeau's testimony been presented, other evidence corroborating Williams's version of events may have rehabilitated his credibility in the eyes of the jury. For instance, Williams testified that after Smith fled from the truck, Simmons's body was still in the driver's seat and was causing the horn to sound and the engine to rev. When the police questioned residents of the neighborhood later that evening, one resident recalled hearing two gunshots and an engine revving so loud that it shook her windows, and another resident heard "a number of shots" and a revving engine. Also consistent with Williams's assertion that he and Simmons were both shot by Smith, it was determined that the bullets retrieved from both victims were fired from the same weapon, though that weapon was never located.

In addition, apart from Williams's identification, Simmons's wife and Smith's fiancée agreed that Smith was the person seen in the surveillance footage. Smith's fiancée also indicated that Smith changed his name and moved out of state shortly after the shooting. And when police questioned Smith about another matter more than a year later, he provided his "new" name and a telephone number that was "suspended at the subscriber's request" later that same day. From this evidence, the jury could have believed that Smith engaged in deceptive tactics to avoid arrest and considered that conduct as evincing consciousness of guilt. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception."); *People v Cutchall*, 200 Mich App 396, 401-402, 405-406; 504 NW2d 666 (1993) (reasoning that the defendant's flight to another state immediately after the crime and his adoption of an alias that he used when arrested for murder were relevant and admissible to show consciousness of guilt), overruled in part on other grounds by *People v Gatewood*, 450 Mich 1025 (1996).

In sum, we agree with the trial court's conclusion that Smith failed to establish deficient performance or resulting prejudice and, therefore, he is not entitled to appellate relief on the basis of ineffective assistance of counsel.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica